300 F.Supp. 496 (1969)
DELMAR BANK OF UNIVERSITY CITY, a Missouri corporation, Plaintiff,
v.
FIDELITY & DEPOSIT COMPANY OF MARYLAND, a Maryland corporation, Defendant and Third-Party Plaintiff,
v.
Pearce H. YOUNG, Third-Party Defendant.
No. 68 C 106(3).
United States District Court E. D. Missouri, E. D.
June 3, 1969.
*497 Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., for plaintiff.
Barnard, Timm & McDaniel, St. Louis, Mo., for defendant and third-party plaintiff.
Shaw, Hanks & Bornschein, Clayton, Mo., for third-party defendant.

MEMORANDUM OPINION AND ORDER
REGAN, District Judge.
In this diversity action tried to the Court on stipulated facts, Delmar Bank of University City seeks to recover on a Bankers Indemnity Bond issued by defendant whereby defendant agreed to hold plaintiff harmless from loss through forgery of, on or in any check.
Pearce H. Young, an employee of General American Life Insurance Company, directed and caused that company from time to time over a two year period to issue a series of 20 checks in the aggregate amount of $24,600 as the proceeds of loans purportedly made by Lester O. Becker against insurance policies he owned. Each check was drawn on First National Bank in St. Louis and was made payable to the order of Lester O. Becker. When issued, the checks were sent to Young for delivery to Becker, but instead of doing so, Young signed Becker's name on the back of the checks, then signed his own name and either cashed them or deposited them to his account at plaintiff bank. At the time of the issuance of the checks, Young, the person who caused Becker's name to be inserted thereon, admittedly had no intention that Becker have any interest in the checks or the proceeds but intended that they be delivered to him for his own use. Becker was wholly unaware of the purported policy loans and of the issuance of the checks until some six months after the last of the checks had been cashed. Admittedly, Young had no authority whatever to act for Becker and his misconduct was never ratified.
Four checks, the first of which was dated June 4, 1965, were drawn and paid prior to July 1, 1965[1]. The remaining 16 checks, aggregating $18,100, were drawn and paid subsequent to July 1, 1965. Plaintiff in each instance guaranteed the endorsements and promptly presented the checks to First National Bank in St. Louis, the drawee bank, through Mercantile Trust Company which acted as plaintiff's clearing agent. Following the direction on the checks, First National Bank in St. Louis then charged the General American account with the amounts thereof and paid said amounts to Mercantile which had paid plaintiff.
Sometime in November, 1967 (about 6 months after the date of the last check), General American became aware that Becker had not actually made or authorized the loans on the policies and had not received any of the proceeds thereof. It then demanded that First National Bank reimburse it for the $24,600 which had been charged against its account, and that bank (for reasons not of record) complied with the demand. In turn, First National Bank demanded and received reimbursement from Mercantile on its guaranty of the endorsements and the latter bank in early December, 1967, demanded and received reimbursement from plaintiff.
Plaintiff's claim is based upon Insuring Clause (D) of the Banker's Blanket Bond whereby defendant agreed to indemnify and hold plaintiff harmless from any loss through "forgery". Defendant having denied that plaintiff's claim was within the coverage of the bond, the burden rests upon plaintiff to prove that it sustained a loss through forgery. This is true even if it be assumed that the checks or the endorsements were in fact "forged" within the meaning of the bond.
*498 The first four checks were issued prior to the effective date (July 1, 1965) of the Uniform Commercial Code in Missouri. The Uniform Negotiable Instruments Law then in effect (Section 401.009, RSMo) provided as follows:
"The instrument is payable to bearer: * * *
(3) When it is payable to the order of a fictitious or nonexisting person or to a living person not intended or entitled to have any interest in it and such fact was known to the person making it so payable or was known to his employee or other agent who supplies or causes to be inserted the name of such payee."

The remaining 16 checks are controlled by the Uniform Commercial Code. Therein it is provided (Section 400.3-405):
"(1) An endorsement by any person in the name of a named payee is effective if * * *
(c) an agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no * * * interest" (in the instrument).
There is no question but that Delmar Bank was a holder in due course of the 20 checks. As to the first four checks it was the holder of "bearer" paper, because the checks were payable to the order of "a living person not intended or entitled to have any interest in [them] and such fact was known to" Young, the agent of General American, who supplied or caused to be inserted the name of Becker as payee. When the bearer paper was presented to the First National Bank in St. Louis (through its clearing agent Mercantile), First National correctly honored the order of General American to pay the four checks to the bearer, and accordingly First National properly charged its customer's account with the amount of such payments. So far as Delmar Bank is concerned, that should have been the end of the matter as to these checks.
The other 16 checks were "order" paper under the Uniform Commercial Code, being payable to the order of Becker. Under the stipulated facts, the endorsements thereon by Young in Becker's name were "effective", and Delmar Bank became and was a holder in due course of these checks. When they were presented to First National Bank (through Mercantile, Delmar's clearing agent), First National again correctly honored the order of General American to pay the checks to a holder in due course holding under "effective" endorsements, and again in each instance properly charged its customer's account with the payments. Again, as far as Delmar Bank is concerned, that should have been the end of the matter as to these sixteen checks. If First National had refused to "reimburse" General American for payments which were right and proper, this case would never have been filed.
Under the stipulated facts plaintiff sustained no loss as a result of the so-called "forged" endorsements. One of the very purposes of the statutes above quoted is to assure that a holder in due course holding paper such as the twenty checks involved in this case suffer no loss by reason of having given value therefor. On the contrary, the statutes were intended to make clear that in instances such as these, any loss which might be sustained as a result of the misconduct of its faithless agent or employee should fall upon the drawer as a risk of its business.
Plaintiff argues that even though (under the stipulated facts) it has the right to proceed against General American and recover, it is not obligated to do so. This may well be true. On the other hand, there was no more reason for plaintiff to repay these twenty checks which were properly honored by the drawee bank than for it to repay any other checks which may have been issued by General American under other circumstances not involving a lack of fidelity on the part of its employees. Whatever paper "loss" plaintiff may have incurred by its repayment of the checks *499 First National had properly honored resulted from its own act in making such repayment. The necessity of suit against General American arose solely as the result of the repayment by plaintiff which should not have been made. And if, as plaintiff implies but does not specifically state, it believes that it should not be subjected to the expense of defending a lawsuit in the event it had refused to repay the amount of the checks, the bond afforded plaintiff requisite protection. We quote:
"The Underwriter will indemnify the Insured against court costs and reasonable attorneys fees incurred and paid by the Insured in contesting any suit or legal proceeding brought against the Insured to enforce the Insured's liability or alleged liability by reason of loss, claim or damage which, if established against the Insured would constitute a valid and collectible loss incurred by the Insured under the bond."
In arguing that its "loss" resulted from the alleged "forgery", plaintiff has cited several cases which it contends demonstrates that the loss was sustained in each instance the moment it paid Young the amount of the checks. The cited cases do not involve comparable facts and are not in point. In none of them was the drawer precluded from claiming as against the bank that the endorsement was a forgery. Typical of the cases cited is Aetna Casualty and Surety Company v. Guaranty Bank and Trust Company, 1 Cir., 370 F.2d 276. There, a faithless corporate employee wrongfully cashed checks made payable to his employer. The drawee intended that the entire interest in the checks belong to the employer. Obviously, the bank which cashed the checks was liable by reason of the unauthorized payments to the payee's employee, and equally obviously, the loss was sustained each time the bank paid out its money to a person not entitled thereto.
In the present case, under the stipulated facts, General American was explicitly precluded, by the very terms of the applicable statutes, from making a claim of forgery as against the First National Bank in St. Louis or Delmar Bank (or Mercantile) which in good faith and without notice of any infirmity gave value for the checks. Plaintiff could not and did not sustain a loss by the good faith payment of its money either for bearer paper or for order paper on which the endorsements were "effective".
We have not overlooked plaintiff's contention that defendant's denial of liability was on a ground other than that on which the case was defended, its position being that under Missouri law an insurer which denies liability on specified grounds waives all grounds not so specified. In our opinion, although defendant's denial of liability was inartfully worded, the basic ground thereof is not essentially different than defendant's trial theory. However, this point is academic, because defendant has never admitted that plaintiff sustained a loss as a result of any "forged" endorsements. Whatever the ground upon which defendant may have denied liability, there can be no doubt but that the burden is upon plaintiff, in order to make a case of liability, to prove there was a loss within the coverage of the bond. Having failed to sustain its burden of proving that it sustained a loss as a result of the endorsements on the checks, plaintiff is not entitled to recover.
Accordingly, we find the issues in favor of defendant and against plaintiff. It follows from our finding that defendant's contingent third-party claim against Pearce Young (who was not accepted as a party defendant by plaintiff) must be dismissed without prejudice.
The foregoing memorandum constitutes our findings of fact and conclusions of law.
NOTES
[1] It appears that the last of these 4 checks, dated June 29, 1965, was in fact paid by the drawee bank on July 2, 1965. However, the parties have treated this check similarly to those of the prior three.