**DELMAR BANK OF UNIVERSITY CITY,
a Missouri Corporation, Appellant,**

v.

**FIDELITY & DEPOSIT COMPANY OF
MARYLAND, a Maryland Corporation, Appellee.**

**No. 19845.**

United States Court of Appeals,
Eighth Circuit.

June 30, 1970.

Rehearing Denied Aug. 3, 1970.

Thomas C. Walsh, St. Louis, Mo., for appellant, and filed brief and reply brief; Joseph H. Grand, St. Louis, Mo., on the briefs.

Herbert E. Barnard, of Barnard, Timm & McDaniel, St. Louis, Mo., for appellee, and filed brief; James E. McDaniel, St. Louis, Mo., on the brief.

Before VAN OOSTERHOUT, Chief Judge, and MATTHES and GIBSON, Circuit Judges.

VAN OOSTERHOUT, Chief Judge.

This is a timely appeal by plaintiff Delmar Bank from final judgment dismissing its complaint against defendant Fidelity & Deposit Company of Maryland (Fidelity). Plaintiff predicated liability on an alleged loss brought about by reason of forgery of endorsements of certain checks paid by plaintiff which plaintiff asserted were covered by the forgery provisions of a Banker's Blanket Bond issued by defendant to plaintiff. Jurisdiction, based on diversity of citizenship, is established. The trial court's opinion is reported at 300 F.Supp. 496.

There is no dispute as to the material facts. In April of 1965 Pearce H. Young, an agent of General American Life Insurance Company (General American), designed a scheme to defraud his principal by representing to General American that a policy holder, Lester O. Becker, desired to borrow money against two life insurance policies issued on Becker's life. Young induced General American to grant policy loans and issue twenty checks payable to Becker totalling $24,-600. The checks were drawn on the First National Bank of St. Louis and paid over a period from June 4, 1965, to March 10, 1967. Young had General American deliver the checks to him on the representation that he was to deliver them to Becker. Young did not transmit the checks but endorsed Becker's name as well as his own on the checks and deposited them in his own account or obtained cash therefor at the Delmar Bank. It is agreed that Young never intended Becker to have any interest in or to receive such checks or the proceeds thereof.

The plaintiff Delmar Bank sent the checks for collection to its collection agent, Mercantile Trust Company, who paid Delmar and presented the checks to the First National for payment. First National then paid Mercantile and charged General American's account. In November 1967 when General American discovered that Becker had not endorsed the checks or received payment thereon, General American demanded that First National reimburse it for the amount charged against its account. First National complied with this request and then sent the checks back through the chain of endorsements to Mercantile for repayment. Mercantile made payment to First National and then sent the checks to the Delmar Bank for repayment.

On December 4, 1967, Delmar Bank gave notice to Fidelity that it might have a claim against its bond because of the checks presented to it by Mercantile for repayment. The Delmar Bank passed on to Fidelity all available information with respect to the alleged forgery. Delmar Bank paid Mercantile the amount of the checks on December 21, 1967, and eight days later mailed proof of loss to Fidelity demanding payment on the bond coverage for forgery.

After investigating the claim, Fidelity on February 28, 1968, declined to accept liability for the amount of Delmar's loss, its refusal being based upon the following ground:

"We must respectfully decline to accept liability under the provisions of our bond for the reason that the evidence submitted indicates the twenty (20) checks attached to the Proof of Claim were payable to bearer or payable to order under the provisions of former Section 401.009, Revised Statutes of Missouri or present Section 400.3–405. Under these provisions we do not believe that when the Delmar Bank of University City gave value for these checks they bore 'forged' endorsements within the meaning of our bond or within the meaning of the Missouri Statutes."

Delmar Bank contends that the defendant Fidelity is limited to the defenses asserted in its refusal to pay and that it is not entitled to urge upon the trial defenses not properly raised in such refusal.

It is quite clear in Missouri that when a bonding company or insurance company denies liability on one basis it waives all defenses to the claim not asserted in their declination of payment. Kammeyer v. Concordia Telephone Co., Mo.App., 446 S.W.2d 486, 490; Aetna Casualty & Surety Co. v. Haas, Mo., 422 S.W.2d 316, 321; State Farm Mutual Automobile Ins. Co. v. Central Surety & Insurance Corp., Mo. App., 405 S.W.2d 530, 532; McCarty v. United Ins. Co., Mo.App., 259 S.W.2d 91. As heretofore shown, Fidelity in declining liability asserted only that the checks did not bear forged endorsements within the meaning of its bond or the Missouri statutes. We believe that under Missouri law Fidelity is limited to this defense and may not assert the defense that the loss was not the result of the forgeries.

Defendant upon this appeal places principal reliance upon its contention that the Delmar Bank was not required to reimburse Mercantile when it passed the checks to Delmar and that in so doing, it acted as a volunteer and created its own loss. It was on this theory that the trial court found for the defendant. Clearly this defense was not raised in the letter rejecting coverage. It was first raised by an amendment to the pleadings permitted by the court after the case had been argued and submitted. We agree with the plaintiff's contention that this issue was not available to the defendant before the trial court. Under such circumstances, we cannot consider such issue upon the merits.

The only defense properly before the trial court and before us is whether the endorsements on the checks paid were forged endorsements under the terms of the Blanket Bond. The trial court did not reach such issue. The interpretation of the bond presents a legal issue to be determined by the court. We are convinced that the bond by its terms provides coverage for loss resulting from a forged endorsement by a fictitious payee.

Fidelity cited § 401.009 R.S. Mo., V.A.M.S. which governed all checks issued before July 1965 and § 400.3–405 which governed subsequent checks, and argued that these sections indicate that the fictitious payee endorsement on the checks are not forged endorsements. The cited sections do not so declare. Section 401.009 R.S.Mo. makes these checks bearer paper. Section 400.3–405 makes the endorsements "effective" under the facts here stipulated. The effectiveness of an endorsement against the drawer is not controlling on a determination of whether the person signing the name of another without authorization constitutes a forgery as such term is defined in the Bankers Blanket Bond. Nor is the fact that these checks were bearer paper relevant on this issue. Furthermore, § (2) of 400.3–405 provides: "Nothing in this section shall affect the criminal or civil liability of the person so endorsing."

The unauthorized signing of the name of another person to a check with intent to defraud constitutes a forgery under § 561.011, R.S.Mo. We have held that the endorsement of the name of a fictitious payee with intent to defraud constitutes a crime of forgery. Hall v. United States, 8 Cir., 372 F.2d 603, 607–611; Rowley v. United States, 8 Cir., 191 F.2d 949, 951. See Home Federal Savings & Loan Ass'n v. Peerless Ins. Co., N.D.Iowa, 197 F.Supp. 428.

Bonding companies are free to contract with their customers with respect to the indemnity to be afforded. There is no legal obstacle to the parties giving forgery a broader definition than is given to the term in the Uniform Commercial Code.

In Kropp Forge Co. v. Employers' Liability Assur. Corp., 7 Cir., 159 F.2d 536, 538, the court determined that the bond extended forgery coverage to fictitious payee situations, holding:

"Being its own lexicographer, appellant made its own definition of forgery. In short, it defined the acts of plaintiff's agents, the commission of

which, created a liability. It covered a check 'payable to a fictitious payee and endorsed in the name of such fictitious payee.' It is immaterial whether such endorsement 'be a forgery within the law of the place controlling' the act."

In American Insurance Co. v. First National Bank, 8 Cir., 409 F.2d 1387, 1390, we stated:

> "Missouri courts have frequently stated that insurance contracts, like other contracts, are to be reasonably construed consonant with the apparent objective and intent of the parties. Where there is no ambiguity, there is no room for construction, and the unequivocal words must be given their plain and ordinary meaning."

 The bond in our present case in Clause (D) protects against loss resulting from forged checks and contains the specific provision reading: "Any check or draft (a) made payable to a fictitious payee and endorsed in the name of such fictitious payee * * * shall be deemed to be forged as to such endorsement." Such language is clear and unambiguous and clearly manifests the intention of the parties that the endorsement of the name of a fictitious payee by another person without his authorization would constitute a forgery. Any other interpretation would make the quoted language meaningless.

The trial court erred in failing to hold that the placing of the endorsement of Becker's name upon the checks without authorization constituted a forgery within the meaning of such term as defined in the Bankers Blanket Bond. Since Fidelity waived the defense that the loss was not the result of the forgery and since we hold that the signatures were forgeries within the meaning of the bond, judgment must be entered for the plaintiff.

Plaintiff in its petition claims damages and attorneys' fees for vexatious delay in payment of its loss. The issues in this case are complex. We believe that Fidelity asserted its defense in good faith. We hold that the plaintiff is not entitled to damages for vexatious delay or attorneys' fees.

The judgment is reversed. The case is remanded to the trial court for further proceedings consistent with the views here expressed.[1]

---

1. By an interlocutory order of October 4, 1968, the trial court dismissed Fidelity's third party complaint against General American and First National. No appeal has been taken from such order and hence the validity of such order is not before us.