**KELLEY–RICKMAN, INC., a corporation, Appellant,**

v.

**HARTFORD LIFE INSURANCE COMPANY, a corporation, Appellee.**

No. 76–1678.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 17, 1977.

Decided July 11, 1977.

Dan Hale, St. Joseph, Mo., for appellant.

J. D. James, Kansas City, Mo., for appellee; David R. Odegard, Kansas City, Mo., on brief.

Before LAY and WEBSTER, Circuit Judges, and REGAN,* District Judge.

* The Honorable John K. Regan, United States District Judge for the Eastern District of Missouri, sitting by designation.

REGAN, District Judge.

On trial to a jury, plaintiff, as the named beneficiary, was denied recovery on a policy of life insurance insuring Dean Rickman in the amount of $200,000. This appeal is from the judgment entered on that verdict. We affirm.

Rickman, who was president of Kelley-Rickman, Inc., applied for the policy on July 25, 1972. On August 10, 1972, he underwent a routine physical examination by Dr. William F. Kuhn, defendant's examining physician. A chest x-ray and an EKG were also made at that time, both of which were negative. Dr. Kuhn approved plaintiff for the insurance and the policy was subsequently issued at standard premium.

On November 26, 1972, eleven days after the policy was delivered to Rickman, he entered the hospital with complaints of chest pain on effort which had been present and increasing over a period of sixty days. He died on December 16, 1972, from a coronary occlusion with myocardial infarction.

The case was submitted on defendant's affirmative defense that Rickman fraudulently misrepresented his prior medical history by giving a negative answer to Question 4e of the application for the policy wherein he was asked whether he had ever had or been treated for heart trouble, heart murmur, pain or angina pectoris.[1]

The evidence was amply sufficient to sustain this defense. As early as February, 1949, Rickman was found to have a rheumatic heart murmur which was still present some six years later. In August, 1960, Rickman was hospitalized for what was provisionally and finally diagnosed by Dr. Caryl Potter as coronary occlusion with infarction. Shortly after this hospitalization, Dr. Potter wrote Rickman a letter dated October 21, 1960, stating, inter alia,

"As you know, you have sustained a coronary thrombosis resulting from coronary sclerosis and insufficiency, secondary to atheromatosis of that artery. By definition, this is arteriosclerotic heart disease." In August, 1961, Rickman complained to a Dr. Elvin Imes of suffering from chest pains typical of angina for about three months and he received treatment therefor. An electrocardiogram taken at that time showed the old healed infarct with stable first degree AV block and unequivocal posterior coronary insufficiency.

It is also significant that some three years prior to the application for the Hartford policy, Rickman applied to the John Hancock Life Insurance Company for a $100,000 life insurance policy with Kelley-Rickman as beneficiary and answered "yes" to the question as to whether he had ever been treated for or had any known indication of chest pain, heart murmur, heart attack or other disorder of the heart and blood vessels. In his 1969 John Hancock application Rickman also stated that he was diagnosed as having had and having been treated for a heart attack. Thereafter, John Hancock issued the policy applied for on a rated or substandard premium (substantially higher than standard) and for that reason the policy was never accepted and did not go into effect.

The misrepresentation defense was submitted by the following instruction:

I instruct you with respect to the essential elements of defendant's affirmative defense that if you find and believe from the evidence,

First, that Dean Rickman represented, in answer to Question 4e of the application for insurance that he had never had or been treated for heart trouble, heart murmur, pain or angina pectoris, and

---

1. The district court, over defendant's objection, refused to permit the defendant to present evidence or to submit the defense that Rickman was not in sound health at the time the policy was delivered on November 15, 1972, holding that defendant had waived all defenses other than that of misrepresentation by denying liability on the ground that defendant had misrep-resented his health status and prior medical history. *See Delmar Bank of University City v. Fidelity and Casualty Company of Maryland*, 428 F.2d 32, 35 (8th Cir. 1970) for the Missouri rule relied on by the district court. In view of our affirmance, we do not consider whether the court properly applied the Missouri law.

Second, that the representation was false and Dean Rickman knew or should have known that the representation was false, and

Third, that Dean Rickman intended to deceive the defendant, and

Fourth, Dean Rickman intended that the defendant should rely on the representation, and

Fifth, that the defendant did in fact rely on the representation in issuing its policy,

then your verdict must be for the defendant.

Plaintiff now contends, without elaboration, that this instruction is "too narrow" in that "(i)t does not encompass the substantive law of Missouri on the subject." However, not only was no such [or any] objection to the instruction made below, but counsel for plaintiff clearly indicated his satisfaction with the Court's charge. It would appear that the real thrust of plaintiff's contention is that the Court erred in refusing to give two additional proffered instructions which related to the misrepresentation defense. The first of these refused instructions reads as follows:

You are further instructed that if you find and believe from the evidence that the information Rickman furnished the defendant, as a whole, was sufficient to put the defendant on inquiry and that the inquiry indicated by such information, if pursued by defendant would have revealed all pertinent information concerning the condition of Rickman's health, then you cannot find against plaintiff on the grounds of a material misrepresentation on or about the time of the application.

Plaintiff argues that in light of *Brummer v. National Life & Accident Insurance Co.,* 59 S.W.2d 781 (Mo.App.1933) and *Winger v. General American Life Ins. Co.,* 345 S.W.2d 170 (Mo.1961) the instruction should have been given. We do not agree. Parenthetically, we note that both *Brummer* and *Winger* involve asserted error in giving, not refusing to give, instructions. More importantly, the facts in the present case are wholly unlike those in the cited cases. Of course, the issue in each instance was whether the insurer had waived the defense of misrepresentation and so was precluded from relying thereon.

In both *Brummer* and *Winger,* there was evidence that the insured had informed the examining physician of all pertinent facts which were known to the insured. In *Brummer* one of the questions answered in the negative inquired of "lung trouble." When she was examined, the insured told defendant's physician that she had been operated on by a named surgeon for an abscess in her back, pointing out the location of the wound in her back, and that she had been confined to the hospital for an extended period of time and was still going back to the hospital at intervals for further treatment. In fact, the insured still had a rubber drain in the wound at the time she was examined.

The Court held that by her disclosure of the presence of the "abscess" in a location near the lung and of the operation that had been performed on account of it, the insured gave notice to the doctor which was "sufficiently broad to cover lung trouble as the term was used in the application, or at least to put him on full inquiry." So reasoning, the Court held that a new trial was not warranted by the giving of the instruction which *after requiring the finding of the foregoing facts* informed the jury that the knowledge of the examining physician was the knowledge of the company, so that by issuing the policy thereafter with such knowledge, the company had waived the defense of misrepresentation.

In *Winger* the insured gave a negative answer in his application to a question asking whether he had or ever had any mental disorder." The insured stated, however, that he had been a patient in the hospital and had consulted a named physician for "nervousness." Defendant's own examining physician had seen the insured getting electroconvulsive therapy in the hospital and was fully aware that he had suffered an emotional disorder. The instruction given in that case advised the jury that if the

insured's answers (describing his illness as "nervousness" and reciting his hospitalization therefor) "as a whole" provided sufficient information to put the defendant on inquiry and that the inquiry indicated by such answers would have revealed the truth as to the nature of the insured's condition (nervous breakdown) for which he had been confined to the hospital, then the jury could not find against the plaintiff on the ground that his answer stated that he had never had a "mental disorder."

In holding that the instruction was not prejudicially erroneous, the court noted that " '(n)ervousness,' as mentioned in the application is clearly a very broad, general description for an illness that required hospitalization." And the court stressed the further fact in that case that the defendant's general agents were advised, prior to the actual delivery of the policy, that the insured was at that very time again in the hospital, with a "nervous breakdown."

■ The instruction submitted by plaintiff in the instant case permitted the jury to speculate as to what, if any, information Rickman had furnished to the defendant which "as a whole" should have put defendant on inquiry. There is no evidence that Rickman himself made any disclosure whatever to the examining physician which would modify his unequivocal negative answer, so that no inquiry was indicated thereby. The only "information" respecting the possibility of a heart condition was that set forth in the "Attending Physician's Statement" which was written on July 31, 1971, by Dr. Gilbert Kelley, Rickman's family physician and business partner.[2]  Dr. Kuhn was not aware of that Statement when he recommended Rickman for coverage. This carefully worded Statement of Dr. Kelley purported to summarize the findings of various doctors and hospitals in 1960 and 1962. Therein, he represented that in 1960 there were no "absolute" findings of a coronary occlusion, and that two years later, after a thorough study at the Kansas University Medical Center, it was determined that Rickman had not had a

coronary occlusion or angina pectoris and that there was nothing significant in Rickman's cardio-vascular status, so that, as worded, the Statement was consistent with Rickman's claim that he had never had any heart trouble or angina pectoris.

■ Defendant could reasonably assume that Dr. Kelley had fairly and truthfully stated all pertinent facts. However, not only do some entries in Dr. Kelley's own records contradict his Attending Physician's Statement, but in a letter which was written by him on November 7, 1964, in connection with a lawsuit involving Rickman, Dr. Kelley represented to the Circuit Court in Savannah, Missouri, that Rickman had suffered an acute anterior occlusion with infarction in 1960 and had suffered from angina pectoris since that time; that Rickman had been hospitalized on at least three different occasions since then for the sequela developing out of his original coronary occlusion; and that the emotional trauma of a public appearance [in court] would probably precipitate an attack of angina pectoris, and so should be avoided "for the sake of possibility of morbidity or even mortality to this individual."

There is no evidence that defendant had any reason to believe that the actual facts were other than as represented in Dr. Kelley's Statement, or that, contrary to his representation therein, the hospital records would reveal an "absolute" diagnosis by Dr. Potter of coronary occlusion with infarction.

As distinguished from both *Brummer* and *Winger,* in each of which the facts were fairly stated by the insured in laymen's language as she or he in good faith believed them to be, here it could reasonably be found that both Dr. Kelley and Rickman concealed or falsified the facts to induce the defendant to issue the policy without further inquiry. In view of the wording of Dr. Kelley's Statement no further investigation by defendant was mandated. Hence, it was not error to refuse the proffered instruction

2.  Dr. Kelley was the holder of a 49 per cent interest in Kelley-Rickman, Inc.

as submitted. Significantly, the court in *Brummer* made the observation that "(h)ad the insured told the doctor of the abscess in her back *and had represented that it was of a harmless character, the situation would have been quite different.*"

■ The other refused instruction told the jury that if after defendant had notice of Rickman's "history of heart trouble" it had Rickman examined and made its own determination of the condition of his heart, then it could be found that defendant did not rely solely on Rickman's answers. Plaintiff has cited no case which would support the giving of this instruction. In our judgment it is misleading and argumentative. The issue of defendant's reliance on the misrepresentation was adequately and fairly submitted in the charge as given.

Plaintiff's remaining contention is that it was denied a fair and impartial trial by reason of the alleged prejudice of the trial judge. For the purpose of making this complaint, plaintiff has sieved through the 549 page transcript and dredged up a handful of comments and rulings on the basis of which, in retrospect, it has conjured up the claim that Judge Oliver displayed bias against it.

The procedural situation on this appeal is comparable to that in *Adams Dairy Company v. St. Louis Dairy Company,* 260 F.2d 46, 55 (8th Cir. 1958), in which this Court stated:

The zeal with which counsel for appellant present this contention on appeal contrasts sharply with their failure to demonstrate any concern at the time the challenged conduct was in progress. A painstaking and assiduous examination of the voluminous record reveals that not a single objection was made or exception taken to the conduct of the judge, said to be so prejudicial as to constitute denial of due process.

■ Nevertheless, as this Court did in *Adams Dairy,* we have given full consideration to plaintiff's belated contention "under our duty to determine whether the parties were denied substantial justice." After a careful study of the entire record, we do not find a single instance of any comment by the trial judge which in any way prejudiced plaintiff or displayed the slightest bias against it. None of the remarks of Judge Oliver, whether considered singly or as a whole, evidences misconduct or an attitude of partiality. The claim of bias and prejudice on the part of Judge Oliver is wholly lacking in merit.

Because of the utter lack of substance to this complaint, no useful purpose would be served by an in-depth discussion of the relatively few matters alleged by plaintiff to be indicative of the bias of the district judge. For the most part, the rulings and comments complained of are taken out of context, and in other instances plaintiff has misstated or distorted the actual record.[3] We add that although we do not fault counsel for straining at gnats, even in criticizing a trial court, we do not countenance unfounded assertions with respect thereto which are contrary to the record.

The judgment is affirmed.

---

3. For example, with respect to one ruling made *outside the hearing of the jury,* plaintiff has argued, "Of course, after a statement like that by the judge *to the jury* there is little left to the point to be made" by counsel in support of his position. And in connection with the so-called "piece of cake" memorandum, the Court patiently explained (in chambers, immediately after the jury was selected) that unless counsel could present some evidence that the memorandum pertained to the health status of plaintiff he would be compelled at the conclusion of the case to inform the jury that the memorandum "has absolutely nothing to do with the case, and I so instruct you." In its brief, plaintiff gives the definite impression, contrary to the fact, that the words "and I so instruct you" were actually part of the instructions given to the jury. Plaintiff further argues that "even before the plaintiff gets into the courtroom the judge is ruling out of the case prime evidence of the plaintiff's case," when in fact the court was merely cautioning plaintiff that he would be required to present some supporting evidence in order to justify an attempt to argue that the memorandum disproved defendant's reliance on the representation. Not only was the court's ruling correct, but plaintiff does not even assign error with respect to the ruling itself.