**Paul S. TAYLOR d/b/a Taylor Towing Service, Plaintiff,**

**v.**

**COMMERCIAL UNION INSURANCE COMPANY, Defendant.**

No. S77–0053C.

United States District Court, E. D. Missouri, Southeastern Division.

March 28, 1979.

James E. Reeves, Ward, Reeves & Luber, Caruthersville, Mo., for plaintiff.

Gary T. Sacks, Goldstein & Price, St. Louis, Mo., for defendant.

## MEMORANDUM

WANGELIN, District Judge.

This cause was submitted to the Court by way of the pleadings, exhibits, stipulations and discovery materials in the above entitled action and the court files, stipulations and opinions in *Pasco Marketing, Inc. v. Taylor Towing Service, Inc.*, 411 F.Supp. 808 (E.D.Mo.1976) and *Pasco Marketing, Inc. v. Taylor Towing Service, Inc.*, 554 F.2d 808 (8th Cir. 1977).

The dispute involves defendant's refusal to defend plaintiff and pay the loss in the *Pasco* actions, *supra*, wherein Taylor Towing Service, Inc. was held liable for damages to Pasco's dock caused by a collision with two barges owned by Security Barge Line, Inc. At the time of the loss plaintiff was not incorporated but was in the busi-

ness of operating a harbor boat near New Madrid, Missouri. Plaintiff was not a fleeting service but would take barges off tows and put barges on tows in the Mississippi River. Plaintiff was the owner of the harbor boat which had towed and moored the barges prior to the collision with Pasco's dock. The circumstances giving rise to the loss are set forth fully in the *Pasco* opinions, *supra.*

The instant action is to recover the amount of the judgment, attorney's fees, expenses and penalties from defendant.

The Court, after fully considering the evidence and the applicable law, hereby makes and enters the following findings of fact and conclusions of law.

### Findings of Fact

1. The defendant issued and delivered to plaintiff two insurance policies, Numbers EKH7202–79 and EKH7202–80 on or about August 21, 1972 providing coverage for a term of one year ending August 21, 1973. Plaintiff paid the premiums for the hull protection—collision liability—towers' liability policy and the protection and indemnity policy. Policy EKH7202–79 contains an endorsement for what is known as the "collision liability—towers' liability clause" and Policy EKH7202–80 provides:

> It is agreed that if the insured as shipowner shall have become liable to pay and shall have in fact paid any sum or sums in respect of any responsibility claim, demand, damages and/or expenses or shall become liable for and shall pay any other loss arising from or occasioned by any of the following matters or things during the currency of this policy in respect of the ship hereby insured . . .
>
> (b) loss or damage to any goods, merchandise, freight or other things or interests whatsoever, other than as aforesaid, whether on board said vessel or not.

2. The damage to Pasco's dock occurred on January 29, 1973. Plaintiff had no knowledge that a claim might exist against him until service of the complaint and summons in the first *Pasco* case on or about June 19, 1974, whereupon plaintiff's attorney on July 3, 1974 sent the complaint and summons to the James R. Moore Insurance Agency, Inc., (defendant's local agent), along with cover letter written by plaintiff's attorney describing the operative facts surrounding the collision. By letter dated July 15, 1974 defendant's local agent forwarded those materials to defendant along with a blind postscript not on the copy of the letter sent to plaintiff or plaintiff's attorney which stated:

> b.p.s. Charles: Jim Ed, Mr. Taylor and I have discussed this claim and they are aware that there is no coverage since Mr. Taylor does not carry wharfowners coverage. As a matter of fact we have quoted wharfowners coverage to Mr. Taylor before and he declined it.
>
> I pointed out to Jim Ed and Mr. Taylor that it was not my place as an agent to decline coverage for an insurance company; and if they would forward me the enclosed information I would forward it to you for your comments. Therefore, I need a letter from you stating that the towers' liability portion of their hull policy only covers a barge while in tow of a scheduled vessel; and that since this vessel was not damaged while in tow but while moored, the towers' liability coverage could not be extended to cover this type of situation.
> C.D.S.

In a letter dated August 2, 1974, defendant's local agent sent plaintiff's attorney a letter enclosing defendant's Senior Adjuster's comments on plaintiff's attorneys' letter. Defendant's Senior Adjuster's letter stated in part:

> At this time it would be premature to advise the assured that there is no coverage for the caption claim under the towers' liability section of the assured's hull policy since additional information is still required to determine if there possibly could be a towers' liability exposure. To enable us to determine if there is coverage provided it is our suggestion that the assured have Mr. Jim Ed Reeves of the law firm of Ward & Reeves effect a further thorough investigation to deter-

mine the proximate cause of the breakaway on their behalf.

Upon receipt of a copy of their findings we will then be in a position to determine if coverage is afforded under the assured's hull policy.

On August 7, 1974, plaintiff's counsel sent defendant's Senior Adjuster a letter again setting forth the operative facts surrounding the collision. The letter provided in part:

Taylor Towing Service is engaged in the business of removing barges from the tow of other barge lines and mooring them to the bank and, upon orders of the towing company, to remove the dock barges and placing them in the tow. On this particular occasion, Taylor Towing Service removed the barge in question from the tow of Security Barge Lines and tied it off to the bank using the cables furnished with the barge. Apparently, the cable broke after the mooring was completed. Your insured has no further duties or obligations with respect to the barge until they are instructed to pick it up and return it to a tow. Your insured does not perform any fleeting services but it seems to us that the liability asserted against your insured arises out of the alleged conduct of a towers' operation. The barges are towed to the bank and tied off by your insured and thereafter, removed by your insured and towed back to the barge line concerned. As a part of their towers' duty, the barge in question was tied off to the shore. Of course, we feel that the claim is groundless, but nevertheless, within the coverage of your policy.

This case has been set for trial in the federal court on September 23rd and we would appreciate your early response to our request that you assume the defense of this case.

On August 29, 1974, defendant's Senior Adjuster sent a letter to plaintiff's attorney which stated:

We acknowledge receipt of your August 7, 1974 letter and regret the long delay in answering of same.

Please be advised that from the contents of your letter we still do not see how this loss is a towers' liability exposure.

Under the circumstances we cannot accept the defense of this case.

3. The defendant, being fully advised of the circumstances of the loss clearly and unequivocally declined to accept the defense of the case and a fortiori pay the claim in its August 29, 1974 letter solely on the ground that the towers' liability coverage did not extend to the collision in issue.

4. Neither policy in issue attempts to define or delineate the scope of coverage afforded in advance, but predicates coverage on the insured being found liable for any damage.

5. In *Pasco Marketing, Inc. v. Taylor Towing Service, Inc., supra,* the Eighth Circuit, found that Taylor Towing, the mooring vessel, had the burden to come forward with evidence showing that it had properly moored and inspected the line securing the barges. Having failed to do so, the court found Taylor Towing guilty of active fault and found Security's fault as the distant owner merely passive. The court therefore held: "As between the two, the mooring vessel is the best party to assume the ultimate fault." In accordance with the Eighth Circuit Court of Appeals decision, Taylor indemnified Security by tendering a check for Security's damages and fees.

6. The collision with the Pasco dock occurred before plaintiff incorporated. The fact that plaintiff later incorporated does not affect coverage which was vested at the time of the accident.

7. The Court finds that defendant's failure and refusal to assume the defense of the *Pasco* actions, and defendant's failure and refusal to pay Taylor's loss or any part thereof was vexatious for the following reasons:

(1) The president of the local agency falsely reported the existence of an agreement between the plaintiff and his attorney on the one hand and the local agent on the other that there was no

coverage under the policies. When pressed on this point in his deposition the local agent became extremely evasive before finally admitting the falsity of his report. The Court considers the false blind postscript strong indicia of an intent to evade liability.

(2) When defendant's Senior Adjuster advised the local agent by letter of July 22, 1974, "at this time it would be premature to advise the assured that there is no coverage . . ." defendant then requested the plaintiff and its attorney to make further investigation. Plaintiff and his attorney then undertook the additional expense and inconvenience of an investigation and responded by letter dated August 7, 1974. Long after the receipt of that letter the defendant denied liability on August 29, 1974 on the grounds of no coverage. Thus, after requesting additional investigation and documentation from plaintiff, when it already had before it all the material facts, defendant then denied liability on grounds *not now relied upon by them.* In what this Court can only consider a willful effort of the defendant to evade its obligation, defendant, after it discovered Senior Adjuster Jeronimo's letter of August 29, 1974 waived the defenses it then sought to assert, filed an affidavit by the Senior Adjuster denying the clear meaning of the Senior Adjuster's letter.

8. Plaintiff's check in the amount of Fifty One Thousand One Dollars and One Cent ($51,001.01) was transmitted to Security Barge Lines and its attorneys on December 1, 1977.

### Conclusions of Law

█ Missouri law provides that when an insurance company denies liability on one basis it waives all defenses to the claim not asserted in their declination of payment. *Delmar Bank of University City v. Fidelity Dep. Co. of Md.,* 428 F.2d 32, 35 (8th Cir. 1970); *Cotton Belt Ins. Co. v. Hauck,* 424 F.Supp. 570, 574 (E.D.Mo.1976); *Aetna Casualty & Surety Co. v. Haas,* 422 S.W.2d 316, 321 (Mo.1968); *Hounihan v.*

*Farm Bureau Ins. Co. of Mo.,* 523 S.W.2d 173, 175 (Spr.Mo.App.1975); *Stone v. Waters,* 483 S.W.2d 639, 645 (K.C.Mo.App. 1972). Defendant's declination of payment in the instant case on the grounds of no coverage forecloses the defendant from advancing further and different grounds for a denial of its liability. Defendant's Senior Adjuster clearly in his August 29, 1974 letter to plaintiff's attorney denied liability on the grounds of no coverage. Policy EKH7202–79 requires for the issuance of policy benefits that "the assured . . . shall become liable to pay". Policy EKH7202–80 contains similar language. Although suit was brought under both insurance policies the parties have stipulated that in no event is coverage provided for the subject claim under both policies. The Court therefore finds that defendant's liability is founded upon Policy EKH7202–79. Although plaintiff's liability in the *Pasco* actions constituted a vigorously litigated and close question of law, this Court is of the opinion that plaintiff is entitled to a ten per cent (10%) penalty under § 375.420 RSMo 1969, because of defendant's conduct clearly reflecting delaying tactics, bad faith and a willful and recalcitrant attitude towards the plaintiff.

█ Defendant no longer relies upon its initial ground in denying liability, i. e., that no coverage existed under the policy, but rather has abandoned its defense of no coverage in light of the Eighth Circuit *Pasco* Opinion, *supra,* and would rely solely upon the defenses of no timely notice; the corporation was not the insured; and Taylor has not paid the loss. These defenses were all waived by defendant's declination of payment on the ground of no coverage. The Court perceives little difference in defendant's assertion of legally inadequate or waived defenses and the failure to assign a valid reason for refusing to pay an insurance claim. The Court therefore considers defendant's refusal to pay vexatious. See *Still v. Travelers Indemnity Co.,* 374 S.W.2d 95, 103 (Mo.1963) and cases cited therein. Judgment will be entered in favor of plaintiff on plaintiff's complaint in the amount

of Fifty One Thousand One Dollars and One Cent ($51,001.01), the full amount of the loss, less Two Thousand Five Hundred Dollars ($2,500) deductible provided in the policy, plus One Thousand Three Hundred Sixty Dollars ($1,360) attorney's fees incurred in the defense of the *Pasco* actions, plus ten per cent (10%) of the loss herein, Four Thousand Eight Hundred Fifty Dollars and Ten Cents ($4,850.10), plus a reasonable attorney's fee for the prosecution of this case. In the event the parties cannot agree on the attorney's fees the Court will fix the amount of plaintiff's attorney's fees.