**CARBOLINE COMPANY, a Missouri Corporation, Plaintiff-Appellant,**

v.

**The HOME INDEMNITY COMPANY, a New York Insurance Corporation, Defendant-Appellee.**

**No. 74–1936.**

United States Court of Appeals, Seventh Circuit.

Argued April 15, 1975.

Decided Aug. 25, 1975.

Eugene J. Kelley, Jr., Chicago, Ill., for plaintiff-appellant.

Robert S. Soderstrom, Chicago, Ill., for defendant-appellee.

Before FAIRCHILD, Chief Judge, CUMMINGS and TONE, Circuit Judges.

CUMMINGS, Circuit Judge.

In this February 1974 diversity action, plaintiff sought a declaration of rights under three identical insurance policies issued by defendant. Plaintiff contends that these policies provide coverage for a counterclaim and cross-claim against plaintiff in an action pending in the court below.[1] The parties filed cross-motions for summary judgment. In an unreported memorandum opinion and judgment order, the district court granted defendant's motion for summary judgment.

In October 1967, Rysgaard-Master Co., Inc. ("Rysgaard"), a painting contractor, negotiated with United Engineers and Constructors, Inc. ("United") and General Electric Co., the general contractors, to coat the interior metal surfaces of two cooling tanks, called tori, at the Dresden Nuclear Power Plant near Joliet, Illinois. Rysgaard obtained the necessary coating material from plaintiff. In May 1967, plaintiff granted Rysgaard a five-year maintenance-free guarantee on the coating that it supplied to Rysgaard. In the guarantee, the following pertinent paragraphs appeared:

"A maintenance free system is defined as one free from rusting, peeling or delamination. Surface color change or blistering of the coating not resulting in rusting are not covered by the guarantee."

* * * * * *

"Nothing in this guarantee shall be construed to cover mechanical or other physical damage to said coating at any time following the completion of the work by Rysgaard-Master Company, Incorporated. The owner or contractor shall take necessary precautions to insure the protection of all coated surfaces prior to unit being put in service."

Because of the asserted failure of the plaintiff's coating, the general contractors exercised their right under the Correction of Work clause by calling upon Rysgaard to coat the tori a second time. Rysgaard did recoat the tori and brought suit against United for the duplicate services it rendered. United and General Electric counterclaimed for $440,000 in damages due to the failure of the tori coating "over and above the approximately $118,000 alleged in the complaint [of Rysgaard] to be due." United and General Electric asserted that plaintiff's coating material was not of merchantable quality and that within the warranty period, the layers of the coating in the Dresden Unit 2 torus delaminated, or separated, in a number of areas, each area having a diameter up to several feet. Instances of peeling, cracking, and rusting were also observed. As to the Dresden Unit 3 torus, they alleged that within the warranty period the coating progressively deteriorated and

"In several areas the coating layers broke open and peeled in areas up to several feet in length. In other areas delamination and rusting were observed."

Damages were asserted for repairs to the Dresden Unit 2 in the amount of $190,000 and as to Dresden Unit 3, $250,000. Rysgaard subsequently filed a cross-claim against plaintiff seeking indemnity and contribution.

---

1. That action, filed in March 1973, is entitled *Rysgaard-Master Co., Inc. v. United Engineers and Constructors, Inc.,* No. 73 C 636 (N.D.Ill.) and will hereinafter be referred to as the *Rysgaard-Master* or underlying action. The counterclaim and cross-claim against Carboline in that action have been settled and dismissed (defendant's Br. 2). However, Carboline claims to be entitled to reimbursement for money spent in its defense and indemnity for any settlement as to the claims against it.

In October 1973, three months after plaintiff had notified it of the claims, defendant wrote plaintiff that it would not provide coverage "in as much as there would be no recovery for property damage, to the named insured's [plaintiff's] products." The letter also said that the occurrence may have been before the inception of the policy and that Exclusion J of the policy was applicable. Exclusion J, a so-called "business risk" exclusion common to policies of the type here involved, provides that contractual coverage does not apply "to property damage to the named insured's products arising out of such products or any part of such products." The letter concluded by stating that defendant was not waiving any other "violations" of the policy. Before sending this letter and while investigating the underlying litigation and plaintiff's claim to insurance coverage with respect thereto, defendant had additional counsel appear for plaintiff in the *Rysgaard-Master* case but was later granted leave to withdraw.

In its memorandum in support of its motion for summary judgment below, defendant disclaimed coverage because of the definition of Contractual Liability set forth in the contractual liability portion of the policies and because of Exclusions K and L in the general liability portion of the policies. Defendant's counsel argued that the contractual liability provisions of its policies were not intended to cover claims under implied or express warranties, such as alleged against plaintiff in the counterclaim in the *Rysgaard-Master* suit, in view of the following definition of "Contractual Liability" in the policies:

"'contractual liability' means liability expressly assumed under a written contract or agreement; provided, however, that contractual liability shall not be construed as including liability under a warranty of the fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner."

Defendant also contended that the general liability provisions of the policies were inapplicable because the policies provided that they did not apply:

"(k) to bodily injury or property damage resulting from the failure of the named insured's products or work completed by or for the named insured to perform the function or serve the purpose intended by the named insured, if such failure is due to a mistake or deficiency in any design, formula, plan, specifications, advertising material or printed instructions prepared or developed by any insured; but this exclusion does not apply to bodily injury or property damage resulting from the active malfunctioning of such products or work;

"(*l*) to property damage to the named insured's products arising out of such products or any part of such products."

In the district court's unreported memorandum opinion, summary judgment was rendered for defendant insurer for the foregoing three reasons advanced by defendant.

*Contractual Liability Coverage*

As already noted, in United's and General Electric's counterclaim recovery was sought against plaintiff on the theory that it breached express or implied warranties concerning the quality of its product.[2] Under the "contractual liabili-

---

2. The specific request for damages in count one of the counterclaim illustrates the reliance upon the plaintiff's warranty:

"As a result of the failure of said torus coating on the Dresden unit 2 and the refusal of the counter-defendants to comply with their warranty obligations, the counter-plaintiffs have already suffered damages in ex-

cess of $190,000.00, over and above the approximately $118,000.00 alleged in the complaint to be due, and may suffer further damages if said repairs prove inadequate.

"Wherefore, counter-plaintiffs pray that they be awarded $190,000.00 and such other amounts as are shown to be justified together with their costs."

**366**

ty" provisions of the policies, defendant was obligated to pay "all sums which the insured, by reason of contractual liability assumed by him under any written contract, shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies * * *." The definition of "contractual liability" is quoted *supra* and excludes warranty claims. Plaintiff's guarantee to give a maintenance-free coating job for five years was a warranty for its product and is therefore not covered within the definition of "contractual liability," so that a breach of the guarantee was not a covered contractual risk.

### Applicability of Exclusion L

■ As shown, Exclusion L disallows general liability coverage for "property damage to the named insured's product arising out of such products or any part of such products." To determine the applicability of this exclusionary clause, it is necessary to refer to United's and General Electric's counterclaim in the *Rysgaard-Master* suit. That counterclaim asserts that plaintiff's coating material was not of merchantable quality or fit for its intended purpose. The counterclaimants asserted extensive damages because of the failure of the tori's coating on Dresden Units 2 and 3 and the refusal of the counterdefendants (Carboline and Rysgaard) to comply with their warranty obligations. The counterclaimants alleged damages due to delaminating, peeling, and rusting, all defects specifically covered by plaintiff's guarantee.[3] Thus, at least in part, the

counterclaim seeks compensation for property damage to plaintiff's product "arising out of such products" within Exclusion L. Under that clause, plaintiff cannot recover from defendant the cost of removing and replacing defective coating.[4] Of course, as defendant concedes (Br. 16, 18), Exclusion L does not cover the claims against Carboline for the repair of damage to the tori themselves.[5] As to those claims, it is necessary to consider Exclusion K.

### Applicability of Exclusion K

Exclusion K, quoted *supra*, disallows general liability coverage for property damage resulting from the failure of the insured's products "to perform the function or serve the purpose intended" by the insured. However, by its own terms, Exclusion K does not apply to property damage "resulting from the active malfunctioning" of the insured's product.

The district court held that Exclusion K applied on the ground that plaintiff's coating had not "actively malfunctioned" but had "merely failed to work properly to seal and safeguard the inner walls of the tanks from being rusted and cracked by the water stored in the tanks." On the pleadings before it, this determination was unjustified.

■ Especially since the advent of notice pleading, it has been universally recognized that an insurer has a duty to defend under a defense clause if there is doubt whether the claim comes within the coverage of the policy. *Sears, Roebuck & Co. v. Travelers Insurance Co.,* 261 F.2d 774, 777 (7th Cir. 1958) (apply-

---

3. As to Dresden Unit 2, cracking was also alleged. The guarantee does not specifically refer to cracking.

4. See *Volf v. Ocean Accident and Guarantee, Ltd.,* 50 Cal.2d 373, 325 P.2d 987 (1958); *Hartford Accident & Indemnity Co. v. Case Foundation Co.,* 10 Ill.App.3d 115, 294 N.E.2d 7 (1st Dist. 1973); *Consumers Construction Co. v. American Motorists Insurance Co.,* 118 Ill. App.2d 441, 254 N.E.2d 265 (2d Dist. 1969). Our holding is consistent with an agreement of the litigants in *Pittsburgh Plate Glass Co. v. Fidelity & Casualty Co.,* 281 F.2d 538 (3d Cir.

1960), that there was no liability on the part of the insurer to pay for defective paint or the costs for the replacement thereof. The *Pittsburgh* case involved an exclusion which was an ancestor to Exclusion L.

5. See *Goodyear Rubber & Supply Co., Inc. v. Great American Insurance Co.,* 471 F.2d 1343 (9th Cir. 1973); *Western Casualty & Surety Co. v. Polar Panel Co.,* 457 F.2d 957 (8th Cir. 1972); *Bowman Steel Corp. v. Lumberman's Casualty Co.,* 364 F.2d 246 (3d Cir. 1966); *Pittsburgh Plate Glass Co. v. Fidelity and Casualty Co., supra,* note 4.

ing Illinois law); *Lee v. Aetna Casualty Co.*, 178 F.2d 750, 752–753 (2d Cir. 1949) (applying New York law); *Lane v. Hartford Fire Insurance Co.*, 343 F.Supp. 79, 82–85 (E.D.Mo.1972) (applying Missouri law); *Fragman Construction Co. v. Preston Construction Co.*, 1 Ill.App.3d 1002, 1005, 274 N.E.2d 614 (2d Dist. 1971). This principle is sometimes said to be based upon the theory that the insurer's duty to defend is broader than its duty to pay. *Fragman Construction Co. v. Preston Construction Co., supra.* The insurer's duty to defend continues until such time as it confines the claim against the insured to a recovery that the policy did not cover. *Sears, Roebuck & Co. v. Travelers Insurance Co., supra,* at 777; *Lee v. Aetna Casualty & Surety Co., supra,* at 753. Thus if the counterclaim and cross-claim of the underlying action in this case are potentially claims covered by the policy, defendant had a duty to defend, which it breached.

■ The counterclaim in the underlying action states in pertinent part:

"[Carboline's] coating material was not of merchantable quality and/or was not fit for the intended purpose."

\* \* \* \* \* \*

"[T]he layers of the coating delaminated, or separated, in a number of areas, each having a diameter up to several feet. Instances of peeling, cracking, and rusting were also observed."

The counterclaim then alleged damages and noted that further damages might be suffered if repairs proved inadequate (see note 2, *supra*). In Rysgaard's reply to the counterclaim, Rysgaard alleged that if any defects appeared in the coating or "damage occurred to the interior" of Dresden Units 2 and 3, the damage was not caused by Rysgaard.[6] Also, in United's and General Electric's May 31, 1974, answers to plaintiff's interrogatories in the *Rysgaard-Master* action, both counterclaimants asserted that plaintiff's coating material caused them "substantial expense to *repair* and re-coat *the*

tori, as well as physical damage to the tori.*" (Emphasis added.) On the pleadings, therefore, it is not clear that the claim against plaintiff-insured excludes the possibility of recovery for an active malfunction of the coating. The "rusting" complained of in the counterclaim is almost certainly the rusting of the tori. It is also possible that the "peeling" and "cracking" referred to in the counterclaim constituted damage to the tori. Nothing precludes the possibility that the counterclaimants are asserting that the "active malfunctioning" of the coating caused this damage, and defendant abandoned its defense without confining the claims against plaintiff to passive causation of the damage to the tori.

In defendant's brief, it admits by way of example that if an insecticide "itself kills or damages the crops, there has been an active malfunction and coverage would exist for the claim of the farmer" whose crop is damaged (Br. 13). See *Kyllo v. Northland Chemical Co.*, 209 N.W.2d 629 (N.D.1973). Similarly here, plaintiff's product itself may have damaged the tori, perhaps by acting as a corrosive element either alone or in combination with the contents of the tori. Such active malfunction would necessitate coverage under the policies. See *Kyllo v. Northland Chemical Co., supra;* 2 Long, The Law of Liability Insurance, App. B § 13. Since the allegations against plaintiff in the *Rysgaard-Master* action do not totally exclude any basis of recovery for which defendant might be liable, it is entitled to recover its costs and attorneys' fees expended in defending that action. See, *e. g., George H. Wolff Sons, Inc. v. Aetna Casualty & Surety Co.*, 286 F.2d 862, 863 (7th Cir. 1961); *Sears, Roebuck and Co. v. Travelers Insurance Co., supra,* at 777.

It was unclear whether Exclusion K applied to the underlying claim, so that summary judgment for defendant on this ground was improper, although partial summary judgment for defendant

---

**6.** See paragraph X of Rysgaard's reply to Count I of counterclaim and paragraph V of its reply to Count II of counterclaim.

based on the definition of "contractual liability" in the contractual liability insurance and based on Exclusion L in the comprehensive general liability insurance was correct.

### Waiver or Estoppel

Appellant cites two cases applying Missouri law in support of the proposition that defendant's assumption of the defense of the counterclaim in the *Rysgaard-Master* action waived all defenses other than the Exclusion J and "no occurrence within the policy period" defenses that defendant raised at the outset but now abandons. *Delmar Bank v. Fidelity & Deposit Co.*, 428 F.2d 32, 35 (8th Cir. 1970); *Aetna Casualty & Surety Co. v. Haas*, 422 S.W.2d 316, 321 (Mo. 1968). Appellant also relies on an estoppel theory, citing several cases applying Illinois law. See, *e. g.*, *Sears, Roebuck & Co. v. Zurich Insurance Co.*, 321 F.Supp. 1350, 1351 (N.D.Ill.1971); *Sims v. Illinois National Casualty Co.*, 43 Ill.App.2d 184, 197, 193 N.E.2d 123 (3d Dist. 1963). The district court rejected the waiver and estoppel argument without noting what state's law was applicable. The opinion below relied on plaintiff's failure to show prejudice.

■ In light of our holding that defendant breached its duty to defend, if Illinois law is applicable to this suit, the estoppel argument may have merit despite lack of provable prejudice to plaintiff. See *Fragman Construction Co. v. Preston Construction Co.*, supra, at 1005; *Country Mutual Insurance Co. v. Murray*, 97 Ill.App.2d 61, 73–74, 239 N.E.2d 498 (2d Dist. 1968). If Missouri law applies, the waiver argument may depend upon whether a general reservation of rights was given before the defense was assumed. Defendant states in its brief that such a reservation was made. Plaintiff, while not denying that the reservation was made, correctly states that the record on appeal contains no such letter. The district court does not indicate the state law upon which it relied in entering summary judgment. The insurance contract makes no choice of which state's law governs its provisions. The parties to the contract are headquartered in different states (Missouri and New York) and it is not clear in what states performance of the contract was contemplated. Neither party to this appeal has briefed the question of which state's law applies in this suit.

Because the existence of the reservation of rights letter may be crucial to the disposition of this case and because it may be necessary to prove various facts in order to make a proper choice of the applicable law,[7] we remand this case to the district court to determine, first, what state's law governs this suit and, secondly, whether defendant is liable for any sum paid in settlement of the counterclaim and cross-claim in the underlying action. It would be helpful to this Court in the future if the district courts in diversity cases would include a determination of the applicable law in any appealable order or decision.

Affirmed in part; reversed in part; both parties to bear their own costs on appeal.

7. Cf. *P. S. & E. Inc. v. Selastomer Detroit, Inc.*, 470 F.2d 125, 127 (7th Cir. 1972).