654 F.2d 494
 SEARS, ROEBUCK AND CO., a New York corporation, Plaintiff-Appellee,
v.
RELIANCE INSURANCE COMPANY, a Pennsylvania corporation,
Defendant-Appellant.
SEARS, ROEBUCK AND CO., a New York corporation, Plaintiff-Appellant,
v.
COMMERCIAL UNION INSURANCE COMPANY, a Massachusetts
corporation and Reliance Insurance Company, a
Pennsylvania corporation, Defendants-Appellees.
 Nos. 80-2048, 80-2049.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 6, 1981.
Decided July 21, 1981.
 
 Jay S. Judge, Park Ridge, Ill., for defendant-appellant.
 Arthur L. Klein, James P. DeNardo, Chicago, Ill., for plaintiff-appellee.
 Before SWYGERT, Senior Circuit Judge, FAIRCHILD and SPRECHER, Circuit Judges.
 SPRECHER, Circuit Judge.
 
 
 1
 This case involves a retailer's attempt to receive legal representation and indemnity for products liability from two insurance companies. The underlying products liability suit alleges that fabric used in girls slacks was defective and that the design and manufacture of the slacks was defective. The insurance carriers for the fabric manufacturer and the slacks manufacturer had each named the retailer as insured in a vendor's endorsement. The carrier for the fabric manufacturer declined coverage on the ground that the fabric was "changed" when it was used as slacks. The carrier for the slacks manufacturer declined coverage on the ground that the retailer "provided" the fabric to the slacks manufacturer. Because we find that the argument of each carrier would render the vendor's endorsement a nullity, we find that both carriers must defend the retailer.
 
 
 2
 * This case arises out of a products liability suit filed against Sears, Roebuck and Company ("Sears") by Rollie and Francine Cumberland in the Circuit Court of St. Clair County, Illinois. In that lawsuit, the Cumberlands alleged that their daughter died of injuries sustained when a pair of girls slacks purchased from Sears caught fire.
 
 
 3
 The Riegel Textile Corporation ("Riegel") manufactured the fabric from which the slacks were made. Sears purchased the fabric from Riegel. Riegel was insured for products hazard liability claims by the Commercial Union Insurance Company ("Commercial"). The Commercial policy covering Riegel named Sears as a "person insured" in a vendor's endorsement.
 
 
 4
 After Sears purchased the fabric from Riegel, it instructed Riegel to send the fabric to Rollic, Inc. Sears contracted with Rollic for finished slacks; the fabric was measured, cut, sewn, labeled, and packaged for Sears by Rollic. Rollic was insured for products hazard liability with the Reliance Insurance Company ("Reliance"). The Reliance policy covering Rollic named Sears as an "additional insured" in a vendor's endorsement.
 
 
 5
 The Cumberland lawsuit advanced two specific and separate claims with regard to the slacks purchased from Sears. First, the complaint alleged that the fabric from which the slacks were made was inherently and unreasonably flammable. Second, the complaint alleged that the final slacks were defective, aside from any defect in the fabric, because they were defectively produced and manufactured.
 
 
 6
 Both the Commercial and the Reliance policies provide that the carrier shall defend any suit, even if groundless, brought on account of goods or products manufactured, sold, handled, or distributed by the named insured. Each policy further provides that the carrier shall pay on behalf of the named insured all sums which the insured shall become legally obliged to pay as damages. But when Sears requested a defense for the Cumberland suit, each insurance company refused to provide such a defense.
 
 
 7
 Sears then brought this action seeking a declaratory judgment that each carrier must defend and indemnify Sears in the Cumberland suit. The district court granted Sears' motion for summary judgment against Reliance. But the district court denied Sears' motion for summary judgment against Commercial and instead, granted summary judgment in favor of Commercial. Reliance and Sears now appeal the respective rulings awarding summary judgment against them. For the reasons discussed below, we affirm the award of summary judgment against Reliance and reverse the award of summary judgment against Sears.
 
 II
 
 8
 We begin with Commercial, insuror of Riegel, the fabric manufacturer. Commercial argues that exclusions in its policy preclude coverage to Sears. The relevant exclusions in the vendor's endorsement state that:
 
 
 9
 1. The insurance with respect to the vendor does not apply to
 
 
 10
 (b) bodily injury or property damage arising out of
 
 
 11
 (i) any physical or chemical change in the form of the product made intentionally by the vendor,
 
 
 12
 (ii) repacking, unless unpacked solely for the purpose of inspection, demonstration, testing or the substitution of parts under instructions from the manufacturer and then repacked in the original container,
 
 
 13
 (iv) products which after distribution or sale by the named insured have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.
 
 
 14
 ("Exclusion 1"). Commercial argues that because the Riegel fabric was fashioned into slacks and labeled by Rollic, Exclusion 1 excludes coverage of Sears. This argument must be rejected.
 
 
 15
 The law is clear that an insurance carrier's duty to defend is determined by reference to the allegations of the underlying complaint. Where, as here, the complaint contains allegations which may be covered by the policy, the carrier's duty continues until such time, if ever, as the claim might be confined to non-covered allegations. This well settled rule was stated by Judge Learned Hand in the landmark case of Lee v. Aetna Cas. & Surety Co., 178 F.2d 750, 753 (2d Cir. 1949):
 
 
 16
 (I)f the plaintiff's complaint against the insured alleged facts which would have supported a recovery covered by the policy, it was the duty of the defendant to undertake the defence, until it could confine the claim to a recovery that the policy did not cover.
 
 
 17
 This rule has been applied on numerous occasions by this and many other courts. See Carboline Co. v. Home Indemnity Co., 522 F.2d 363, 366 (7th Cir. 1975) (carrier must defend "if there is doubt whether the claim comes within the coverage of the policy"); and Sears, Roebuck and Co. v. Travelers Ins. Co., 261 F.2d 774, 777 (7th Cir. 1958) (carrier required to defend suit "until it could confine the claim to a recovery that the endorsement clearly did not cover, not merely one which it might not cover") (emphasis added).[1]
 
 
 18
 In the recent case of Solo Cup Co. v. Federal Ins. Co., 619 F.2d 1178 (7th Cir. 1980), we set forth the test for determining, under the above rule, whether a carrier has a duty to defend. In Solo Cup, the district court held that an insurance carrier did not have a duty to defend because the underlying complaint contained allegations which were inconsistent with the policy's definition of "occurrence". We reversed, stating:
 
 
 19
 It is well settled under the law of Illinois that
 
 
 20
 (this) duty to defend extends to cases where the complaint alleges several causes of action or theories of recovery against an insured, one of which is within the coverage of the policy while others (might) not be.
 
 
 21
 ....
 
 
 22
 An insurer may not refuse the tendered defense of an action unless a comparison of the policy with the underlying complaint shows on its face that there is no potential for coverage.
 
 
 23
 619 F.2d at 1183 (citations omitted) (first emphasis in original; second emphasis added).
 
 
 24
 In applying the Solo Cup test to this case, we must compare the exclusion relied on by Commercial with the allegations of the Cumberland complaint. As the above cases indicate, until such time as it is clear that there is "no potential for coverage," Solo Cup, 619 F.2d at 1183, of any aspect of the Cumberland suit, Commercial must defend Sears.
 
 
 25
 Commercial argues that under Exclusion 1, it can escape its policy obligations because the fabric sent by Riegel to Rollic was "removed from its original container," "physically changed" by being "cut and sewn" and by having an elastic waist band added, and "labeled". But it is not clear that the "change and repacking" or "relabeling" exclusions relied on by Commercial mean that there is no potential for coverage of Sears.
 
 
 26
 In a recent case on all fours with this case, the Third Circuit rejected the exact argument advanced here by Commercial. Mattocks v. Daylin, Inc., 452 F.Supp. 512 (W.D.Pa.1978), aff'd mem., 614 F.2d 770 (3d Cir. 1979). We find the Mattocks decision persuasive because the underlying complaint here, as the underlying complaint in Mattocks, alleges both flammability inherent in the fabric and defective production and manufacture. Just as in Mattocks, a comparison of the complaint with the policy provisions shows that the exclusions in issue do not clearly preclude coverage.
 
 
 27
 In Exclusion 1, two categories of "change" conceivably could preclude coverage for Sears. The first category specifies physical or chemical changes or repacking; the second category specifies products which have been changed by labeling or by being made part of another thing. All of the exceptions are preceded by the phrase "arising out of."
 
 
 28
 First, the first category of Exclusion 1 excludes coverage for injury arising out of "any physical or chemical change" or arising out of repacking. But the injury here does not meet the "arising out of" requirement. Although the fabric was "changed" and "repacked" by Rollic, the Cumberlands allege, among other things, that their daughter's injury "arose out of" the fabric itself and not any change made in the fabric or any repacking. On this issue, it is worth quoting in full the Mattocks court's discussion of identical contract language:
 
 
 29
 The "arising out of" language of Section 1(b) of the endorsement limits the applicability of Section 1(b)(i). The changes in form by a vendor must cause plaintiff's injuries before the vendor is excluded from coverage under the endorsement. If the change in form resulted in plaintiff's injuries, the vendor is obligated to provide its own defense. Any change in form causing injury would take the product out of (the manufacturer's) control. In such a case fairness demands that neither (the manufacturer) nor its carrier be held responsible for an injury causing change by a third party. However where the change in form does not cause the injury and the injury is caused by the material itself, regardless of the form it takes, the manufacturer (and therefore its carrier) is responsible for any harm arising therefrom.
 
 
 30
 452 F.Supp. at 515 (first emphasis in original; second emphasis added). For the above reasons, the "arising out of" requirement prevents application of the first category of exclusions.
 
 
 31
 Analysis of the second category of exclusions in Exclusion 1 is more troublesome. This category refers to injuries arising out of "products" not "changes" which have been relabeled or used as a part of any other thing. The "arising out of" requirement remains in this second category. But if Commercial's interpretation of the contract prevails, that requirement is effectively nullified by the way in which the excluded items are listed. A comparison of the two categories of exclusion in Exclusion 1 convinces us that Commercial's argument must be rejected.
 
 
 32
 The first category of exclusions in Exclusion 1 excludes injuries arising out of specified changes. This language requires a nexus between the changes and the injuries. As the Mattocks court discussed, this language comports with principles of fairness. It would be unfair to hold a manufacturer responsible for injuries arising out of changes made after the product left the manufacturer's control. But Commercial argues that the second category of exclusions in Exclusion 1 need have no nexus requirement between the changes and the injuries. Commercial argues that the second category of exclusions should be read to exclude coverage of injuries arising out of products which have been "labeled or relabeled," or used as a "part" of any other thing regardless of whether there was any connection between the injury and the relabeling or use as a part.
 
 
 33
 The problem with Commercial's argument is that it proves too much. Riegel sold the fabric to Sears to become slacks with the Sears' label. If the mere labeling or use as a "part" of the finished slacks could defeat coverage of any defect in the fabric itself, then the vendor's insurance covering Sears could not have been worth the piece of paper on which it was printed. The vendor's endorsement would become a nullity. As the Mattocks court said, discussing the identical language:
 
 
 34
 To interpret the provisions of (this) exclusion as does (the insurer), would effectively preclude any vendor of (the manufacturer's) products (except those selling under the (manufacturer's) label) from coverage. This is not a reasonable interpretation of the contract of insurance because of the language used in the endorsement and in view of the usual impetus for securing products hazard liability insurance, i. e., to encourage vendors to purchase and sell products of the party securing the insurance.
 
 
 35
 452 F.Supp. at 516.
 
 
 36
 We agree with the Mattocks court that the construction suggested by the carrier is not reasonable. That construction would nullify the very purpose of the vendor's endorsement, causing a forfeiture where the parties intended coverage. This court must assume that Commercial intended to insure Sears under the vendor's endorsement of its policy unless there is a nexus between changes made by Sears and the injuries. Any other assumption would allow the carrier to simply accept the premium and avoid any corresponding obligation. Indeed, the vendor's endorsement listed Sears as an "additional named insured." But if this exclusion is construed as Commercial suggests, there would never be any coverage for Sears with regard to Riegel products if those products then became final "things" which received Sears' labels. The law cannot countenance such illusory "coverage".
 
 
 37
 Not only would Commercial's interpretation render the vendor's endorsement a nullity, but also it would violate general rules of construction of insurance contracts. A familiar rule is that insurance policies are to be construed in favor of the insured. This principle is most rigorously applied in considering the meaning of exclusions incorporated into a policy of insurance. See Grahame v. Mitchell, 28 Ill.App.3d 334, 329 N.E.2d 17, 22 (1975) ("Ambiguities are to be resolved in favor of coverage; exclusions from coverage are to be construed narrowly."); and Dawe's Laboratories, N.V. v. Commercial Ins. Co., 19 Ill.App.3d 1039, 313 N.E.2d 218, 219, 225 (1974) ("An interpretation of the above exclusion to eliminate the liability of the insurer in the case at bar and to exclude production and manufacturing mistakes would virtually emasculate insurance protection against product liability."). For the foregoing reasons, we find that the "relabeling" exclusion, to be effective, requires that the injury "arise out of" the relabeling or use as "part" of another product.
 
 
 38
 In addition to the above grounds, an equitable reason exists for rejecting Commercial's position in this case. Initially, Commercial refused to defend Sears on the sole, specific ground that it "could not find anything to prove" the slacks purchased by the Cumberlands were made of Riegel fabric. Almost a year later, it abandoned that argument and then advanced the argument that the Cumberland suit came under Exclusion 1 of the policy.
 
 
 39
 The law is in a state of flux regarding whether a carrier's denial of liability on the basis of a single specific ground amounts to a waiver of other grounds upon which the carrier later seeks to avoid coverage. See Sears, Roebuck & Co. v. Zurich Ins. Co., 321 F.Supp. 1350, 1352 (N.D.Ill.1971) (when an insurer has unjustifiably refused to defend, it cannot later raise other policy exclusions); McFadyen v. North River Ins. Co., 62 Ill.App.2d 164, 209 N.E.2d 833, 836-37 (1965) (carrier's duty to defend is based on allegations in complaint; where carrier breaches this obligation, it is estopped from later raising exclusions as to the duty to defend); and Sims v. Ill. Nat'l. Cas. Co., 43 Ill.App.2d 184, 193 N.E.2d 123, 129 (1963) (carrier has no right to insist that insured be bound by exclusions after carrier has already breached the contract by refusing to tender a defense based on the allegations in the complaint). But see Finer Amusements, Inc. v. Citizens Ins. Co., 327 F.2d 773, 776 (7th Cir. 1964) (carrier not restricted in its defense in an action on a policy to the reason assigned in its refusal to pay if the insured has not been misled to his injury by the failure to give other reasons); and Ladd Const. Co. v. Ins. Co. of North America, 73 Ill.App.3d 43, 29 Ill.Dec. 305, 310, 391 N.E.2d 568, 573 (1979) (carrier not required to raise all defenses in refusal letter to insured).
 
 
 40
 Because the law on this issue is not clear, we do not rely on a waiver or estoppel argument in our rejection of Commercial's position. But we note, as an equitable matter, that Commercial's tactics in this case seem to represent piecemeal gamesmanship disfavored by the law. When Commercial initially refused to defend, it had full knowledge of its policy, including the exclusions in that policy. It knew from the outset that the Cumberland claim alleged that Riegel fabric had been used to make a pair of Sears' slacks. This was the exact factual basis which it subsequently used as the foundation for its claim of exclusion. Simply put, Commercial never bothered to claim applicability of Exclusion 1 until it apparently realized it would not prevail on its initial claim that the fabric was not manufactured by Riegel. This action represents the type of practice which could result in an estoppel of subsequent defenses. See Zurich, 321 F.Supp. at 1352.
 
 III
 
 41
 We now turn to Reliance, insurer of Rollic, the manufacturer of the completed slacks. Reliance's policy covering Rollic contains a vendor's endorsement, virtually identical to the vendor's endorsement in the Commercial policy, which lists Sears as an additional named insured.
 
 
 42
 Reliance argues that Sears is not covered by its policy because of the following exclusion in the vendor's endorsement:
 
 
 43
 The insurance does not apply to any person or organization, as insured, from whom the named insured has acquired such products or any ingredient, part, or container, entering into, accompanying or containing such products.
 
 
 44
 ("Exclusion 2"). Reliance argues that although Sears is listed as an "additional named insured," it is not "properly" an additional named insured if Sears provided Rollic with the "product", or any ingredient of the product. Reliance then argues that Sears did provide Rollic with the fabric in that Sears picked out and paid for the material, and directed that it be sent from Riegel to Rollic. There are numerous problems with Reliance's argument.
 
 
 45
 First, we begin with an examination of the language in the contract. Comparing Exclusion 1 with Exclusion 2, we note that the language of Exclusion 2 does not refer to "vendors". This omission, read in the context of the preceding language, can be read to indicate that Exclusion 2 was not meant to apply to vendors such as Sears. The initial paragraph of the vendor's endorsement provides that the "Persons Insured" provision of the policy is "amended to include any person or organization designated below (herein referred to as 'vendor', as an insured ...." (emphasis added). Following this introductory statement under which Sears is insured as a "vendor", the policy lists two separate exclusions. Exclusion 1, relevant to the Commercial policy but not involved here, states "(t)he insurance with respect to the vendor does not apply to" listed excluded activities (emphasis added). But Exclusion 2 states "(t)he insurance does not apply to any person or organization, as insured, from whom the named insured has acquired such products ...." Exclusion 2 does not use the word "vendor", but does use the term "named insured." Sears is a "named insured" within the meaning of Exclusion 2 because it meets the test of the vendor's endorsement which provides that: "the 'Persons Insured' provision is amended to include any ... organization designated below ... as an insured ...." Sears is an "organization designated below." Thus, read in light of the preceding language, Exclusion 2 indicates that the insurance does not cover any organization (i. e., "does not apply to any organization, as insured") from whom Sears, now the "named insured," has acquired any ingredient entering into the product. Construed this way, Exclusion 2 would bar Riegel from claiming coverage from Reliance as to the Cumberlands' fabric allegations because Riegel is an organization from whom Sears had acquired "such products," the fabric for the slacks.
 
 
 46
 The conclusion that Exclusion 2 does not apply to vendors is reinforced by several other factors. One factor is that the purpose of extending products liability coverage by vendor's endorsement is to encourage vendors to buy and then sell the products of the insured. See Mattocks, 452 F.Supp. at 516. It would be consistent with the use of vendor's insurance as a merchandising incentive for Reliance, drafter of the policy, to exempt vendors from Exclusion 2. Another factor consistent with reading Exclusion 2 as not applicable to Sears is that the basic rules of construction of insurance contracts, discussed earlier, are that exclusions must be read narrowly, ambiguities must be construed in favor of the insured, and that interpretations favoring coverage must be adopted.
 
 
 47
 Second, and perhaps most important, Reliance incorrectly perceives the "product" which is in issue regarding Rollic. We reemphasize that the Cumberland complaint advanced two separate theories of liability. The theory relating to Rollic was that the design and manufacture of the slacks was defective. This theory is distinct from the theory regarding Riegel alleging that the fabric itself was inherently defective. Under the theory applicable to Rollic, the "product" which Reliance must defend is Rollic's design and workmanship, not the Riegel fabric. It is undisputed that Sears did not supply Rollic with the slacks design. Rollic alone measured, cut, sewed, styled, designed, and packaged the slacks from the Riegel fabric it purchased from Sears. In Exclusion 2, the phrase "entering into, accompanying, or containing" modifies the language "ingredient, part or container." Only an "ingredient, part or container" of the acquired product is subject to the exclusion. The fabric was not an "ingredient" or "part" or "container" of the Rollic design and workmanship. Thus, Exclusion 2 is inapplicable to the claim against Sears regarding negligent design and manufacture.
 
 
 48
 Third, although it is undisputed that a carrier must defend where there is doubt as to the coverage of a policy, Carboline Co. v. Home Indemnity Co., 522 F.2d 363, 367 (7th Cir. 1975), Reliance argues that Sears' situation is one of "potential insured" rather than "potential coverage." Reliance argues that, while there is a duty to defend an actual insured if there is doubt as to coverage, there is no duty to defend a "potential insured." But Reliance's ingenious argument is wrong, because Sears is not a stranger seeking coverage under another's policy. Sears is expressly named as an "additional insured" in the Reliance policy.
 
 
 49
 Finally, as the district court noted, it is important to examine the purpose of Exclusion 2. The district court found that this exclusion is intended to protect Rollic from liability arising from defective materials supplied or manufactured by the vendor. As we have noted, the defective design and workmanship claim is separate from the claim regarding defective fabric. Were we to accept Reliance's position regarding Exclusion 2, Reliance would escape liability in all cases alleging defective design where another vendor supplied the fabric or arranged to have the fabric supplied. Such a position would render the vendor's endorsement a nullity for any vendor such as Sears which designated the fabric. We, along with the district court, cannot believe the parties intended such a nullity.
 
 IV
 
 50
 In this case, the two insurance companies, by each looking at only part of the underlying Cumberland complaint, have attempted to place Sears in a "Catch-22" situation. On the one hand, Commercial argues that its policy should be construed to mean that Sears is not covered because Riegel's fabric was changed into slacks. On the other hand, Reliance argues that its policy excludes coverage for Sears because Sears supplied Rollic with the Riegel fabric for the slacks. Both arguments would result in the nullification of "vendor's endorsements" to vendors such as Sears.
 
 
 51
 To find for the carriers, thus nullifying the vendor's endorsements, would cause a forfeiture where the parties intended coverage. Such a result would contravene public policy. Appleman, 16A Insurance Law and Practice § 9082 (rev. ed. 1968). As the court stated in Heffron v. Jersey Ins. Co. of N.Y., 144 F.Supp. 5, 9 (E.D.S.C.1956), aff'd, 242 F.2d 136 (4th Cir. 1957), it must be remembered that, after all, "the primary object of all insurance is to insure." Because we cannot believe the parties intended to create a contract which was a nullity, we find that both carriers must defend Sears in the Cumberland action.[2] Thus, we affirm the district court's opinion with regard to Reliance. We reverse the award of summary judgment for Commercial and remand this case to the district court with instructions to award summary judgment in favor of Sears.
 
 
 52
 Affirmed In Part, Reversed In Part, And Remanded With Instructions.
 
 
 53
 FAIRCHILD, Circuit Judge, dissenting.
 
 
 54
 I respectfully dissent.
 
 
 55
 Sears bought fabric from Riegel, and supplied it to Rollic, made it into a garment, packaged, labeled, and ready for sale by Sears, who sold it to its customer. Sears sold the Riegel fabric as only a part or ingredient of a garment. Rollic made a product out of material supplied by Sears.
 
 
 56
 Commercial Union is the products liability insurer of Riegel. Reliance is the products liability insurer of Rollic. Each policy contained an endorsement affording coverage endorsed. The Commercial Union endorsement is designated a "Broad Form" and the Reliance endorsement is designated a "Limited Form." The provisions differ to some extent, but the language relevant to this case is identical.
 
 
 57
 Each endorsement amended the policy to include "a designated vendor as an insured, but only with respect to the distribution or sale in the regular course of the vendor's business of the named insured's product." The Commercial Union endorsement designated "All Vendors" under the legend "Name of Vendor(s)." Reliance specified Sears. Each insurer also issued a certificate of insurance to Sears.
 
 
 58
 Each endorsement provided that it is "subject to following additional provisions," so worded as in effect to be exclusions.
 
 
 59
 As to Commercial Union, Judge McGarr decided that Sears was not granted coverage for bodily injury liability arising out of alleged defects in the fabric produced by Riegel because of provision 1(b)(iv):
 
 
 60
 "1. The insurance with respect to the vendor (Sears) does not apply to:
 
 
 61
 (b) bodily injury or property damage arising out of ....
 
 
 62
 (iv) products (fabric) which after distribution or sale by the named insured (Riegel) have been labeled or relabeled or used as a container, part or ingredient of any other thing (garment) or substance by or for the vendor (Sears)."
 
 
 63
 I fully agree and see no room for construction under the traditional rule of construction against the insurer.
 
 
 64
 The majority finds it is unreasonable to read the provision literally because it would make the coverage "illusory." With all respect, it seems to me that even with the limitation of coverage to instances where the vendor sells the product of the named insured in its original form, the endorsement affords substantial invaluable coverage.
 
 
 65
 The fallacy of Sears' position is illustrated by a passage from its reply brief:
 
 
 66
 "Commercial does not and could not deny that if the Cumberlands (plaintiffs against Sears) had made the same allegations of defective fabric against Riegel they make against Sears, it would be required to defend and indemnify Riegel. What it and the Court below seem to have ignored is that the certificate of insurance and vendor's endorsement entitle Sears to the very same coverage."
 
 
 67
 To the contrary, it is plain that provision 1(b)(iv) of the endorsement limited the coverage afforded the vendor to less than the coverage afforded the named insured. Surely the insurer had the right to do so. And there appeared to be sound underwriting reasons for an insurer to limit coverage and obligation to defendant vendor to claims arising out of products of the named insured which passed through the hands of the vendor without significant change.
 
 
 68
 In the case before us, as Sears points out, if the coverage afforded the vendor were not so limited, then Commercial Union would have to defend the Cumberlands' lawsuit from the beginning, even though "a long way down the road" it may be determined that Riegel's fabric did not cause the injury.
 
 
 69
 In transactions following the pattern in this case, Sears probably wants its suppliers to provide it coverage without this limitation. If so, it should bargain for it and presumably a higher premium would be paid. The case against Reliance presents a different question. Rollic, its named insured, produced a product ready for sale by Sears. Accordingly, 1(b)(iv) does not exclude coverage. In essence, however, the facts present the other side of the coin. Sears has supplied a part or ingredient of the finished product and it may be "a long way down the road" before it can be determined whether Rollic's processing of the fabric contributed to the Cumberland's injury. An insurer might well not insure a vendor who had supplied materials to the named insured at the same premium it would insure a vendor who merely bought and re-sold the named insured's product. Accordingly, for a reason similar to that which prompted 1(b)(iv), the further provision of the endorsement operates here to exclude from being "an insured" any person or organization "from whom the insured acquired such products or any ingredient, part or container, entering into, accompanying or containing such products."
 
 
 70
 The majority attempts to demonstrate that Sears is not a person or organization denied coverage by this provision by interpreting "named insured" as including Sears. With all respect, I find this construction untenable.
 
 
 71
 I have already quoted the language of the endorsement by which the "vendor" is made an "insured" with respect to the vendor's sale of "the named insured's products." Clearly "named insured" does not mean Sears in that context.
 
 
 72
 Provision (a) says the insurance with respect to the "vendor" does not apply to any express warranty or sale for a purpose "unauthorized by the named insured." Again, "named insured" cannot mean Sears.
 
 
 73
 Provision (b)(iv), similar to the one relevant to Commercial Union, says the insurance with respect to the vendor does not apply to "products which after distribution or sale by the named insured" have been labeled, etc. "by the vendor." Again, "named insured" does not mean Sears.
 
 
 74
 At the top of the endorsement, opposite the printed legend "Named Insured" appears "Rollic, Inc., et al." and Sears, Roebuck and Company appears under the printed legend "Name of Vendor(s)" Within the fairly brief text of the endorsement there are four demonstrations that "named insured" does not mean Sears.
 
 
 75
 I would give effect to the provisions relied on by both insurers. I would affirm the part of the judgment in favor of Commercial Union and reverse the part of the judgment which is against Reliance.
 
 
 
 [1]
 See also Mattocks v. Daylin, Inc., 452 F.Supp. 512, 514 (W.D.Pa.1978), aff'd mem., 614 F.2d 770 (3d Cir. 1979) ("(o)nly those claims clearly not covered by the policy are excluded from the duty to defend"); St. Louis-San Francisco Ry. Co. v. Armco Steel Corp., 490 F.2d 367, 371 (8th Cir. 1974), cert. denied, 417 U.S. 969, 94 S.Ct. 3173, 41 L.Ed.2d 1140 (1974) ("(i)f the accident does not arise out of those (excluded) activities and if no other provision excludes coverage, the insurance does apply"); and Boutwell v. Employers' Liability Assur. Corp., 175 F.2d 597, 599 (5th Cir. 1949) (duty of carrier to defend is determined by the allegations against the insured, regardless of whether the suits were groundless or fraudulent)
 
 
 [2]
 All arguments not expressly discussed in this opinion have nevertheless been carefully considered. They have been found either wanting merit or insufficiently important to warrant extended discussion. Their discussion would not have altered this decision