SEARS, ROEBUCK AND CO., Plaintiff,

v.

EMPLOYERS INSURANCE OF WAUSAU, A Mutual Company, Defendant.

No. 82 C 4294.

United States District Court, N.D. Illinois, E.D.

Dec. 22, 1983.

Arthur L. Klein, Richard K. Wray, Theodore T. Schuld, Arnstein, Gluck, Lehr, Barron & Milligan, Chicago, Ill., for plaintiff.

Stephen J. Friedman, John G. Poust, Rooks, Pitts, Fullager & Poust, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

Plaintiff, Sears, Roebuck and Co. ("Sears"), has moved for summary judgment against defendant, Employers Insurance of Wausau ("Employers"). Sears seeks a declaration that, by virtue of a policy of insurance issued by Employers to Midwest Technical Publications, Inc. ("Midwest"), and extended to Sears by a vendor's endorsement, Employers is obligated to defend Sears against Count III of the Second Amended Complaint filed against it in the Circuit Court of Cook County, Illinois, by Richard J. Short ("Short"). (PX–A).[1] Employers has filed a cross motion for summary judgment seeking the contrary declaration.

In Count III of Short's complaint, Short alleges that he purchased from Sears a manual containing instructions on the maintenance and operation of a Craftsman 10″ Radial Arm Saw, and that it was the duty of Sears to write, print, publish and distribute the manual with a reasonable degree of care and caution so as not to injure Short, knowing that Short would rely upon the representations made in the manual. (PX–A at 5). Short then alleges the following:

7. That, notwithstanding their aforesaid duty, [Sears was] then and there guilty of one or more of the following wrongful acts and/or omissions:

a. Carelessly and negligently failed to provide Plaintiff with [sic] manual that gave adequate and proper instructions as to the operation of the Radial Arm Saw;

b. Carelessly and negligently failed to properly instruct Plaintiff as to the correct and safe method of operating the aforesaid Radial Arm Saw;

c. Carelessly and negligently failed to warn Plaintiff of the dangers involved in operating the aforesaid Radial Arm Saw.

8. That, as a direct and proximate result of one or more of the aforesaid wrongful acts and/or omissions of [Sears], the aforesaid Radial Arm Saw caught [Short's] hand within, then and there injuring [Short] .... (PX–A at 5).

The facts material to this motion for summary judgment are undisputed. The manual referred to in Count III of the Short complaint is entitled "POWER TOOL KNOW HOW saves you money—Radial Saw." The manual is one of a series of "Know How" books concerning the operation of various power tools prepared for Sears by Midwest. The manual was copyrighted by Midwest in 1974. (PX–B). Sears purchased the finished manual from Midwest for resale in its retail stores. Other than the books in the "Know How"

---

**1.** Exhibits attached to plaintiff's motion are referred to as "PX."

series, Sears purchases no products from Midwest. (PX–C).

The original version of the manual was prepared by Midwest over a period of several months in 1974. Midwest sent the drafts it prepared of various sections of the manual to James Durham, then the Assistant Buyer of Bench Power Tools for Sears. Mr. Durham forwarded these drafts directly to the various manufacturers of the products described or represented in the manual for comments and suggested revisions. The manufacturers sent the drafts, comments, and suggested revisions directly to Midwest, which incorporated them into the text. Midwest sent the revised drafts back to Mr. Durham, who forwarded them to the manufacturers for their final comments. Sears was not required to approve and did not in fact approve or disapprove the technical content of the manual before Midwest published it. However, all the technical writing aspects of the manual were handled solely by Midwest, incorporating the suggested revisions made directly to Midwest by the various manufacturers. (PX–D). Sears participated in the cover design of the manual.

With respect to the revised edition, Sears and Midwest agreed that Midwest would handle all writing and revisions agreed upon by Sears and Emerson Electric Company ("Emerson"), the manufacturer of the saw; that Sears and Emerson would serve in the capacity of technical advisor on power tool content and safety; that Sears and Midwest would decide on the manual content that would not directly affect the major power tools; and that prior to production of the manual, silver prints would be submitted to Sears for final review. (DX–C).[2]

Employers issued to Midwest a policy of insurance which insures Midwest against loss as a result of any claim for "bodily injury and property damage arising out of the named insured's [Midwest's] products." This insurance policy further obligates Employers "to defend any suit against the insured [Midwest], ... even if any of the allegations of the suit are groundless, false or fraudulent ...." (PX–E).

This policy also contains a vendor's endorsement (PX–F) which extends Employers' duties to defend and indemnify to Sears "with respect to the distribution or sale in the regular course of the vendor's business of the named insured's product." The endorsement was sold by Employers to Midwest for the minimum premium, $9.00 for bodily injury and $12.00 for property damage. Sears required the endorsement to continue business with Midwest and Sears specified the form of endorsement. (PX–F).

On September 21, 1981, based upon this vendor's endorsement, Sears tendered the defense of Count III of the Short complaint to Employers by a letter addressed to Midwest. (PX–G). Employers rejected Sears' tender.

Employers asserts four bases for its denial of coverage. First, Employers asserts that Count III of the Short complaint does not involve the product distributed or sold by Midwest, that is, the physical manual, but rather involves the intellectual content of the manual, and that Short's allegation is not that the physical manual alone was unsafe, but rather that the instructions and warnings contained therein were inadequate.

Employers relies on three cases which draw a distinction between a physical book and its intellectual content. In *Walter v. Bauer*, 109 Misc.2d 189, 439 N.Y.S.2d 821 (Sup.1981), *affirmed*, 88 A.D.2d 787, 451 N.Y.S.2d 533 (App.Div.1982), the plaintiff was injured during a science experiment from the textbook *Discovering Science 4*, and brought an action claiming the text was unreasonably dangerous under strict tort liability for containing insufficient warnings. In denying the claim, the court stated that the textbook was not a defective "product" stating:

> *Discovering Science 4* cannot be said to be a defective product, for the infant plaintiff was not injured by use of the

2. Exhibits attached to defendant's motion are referred to as "DX."

book for the purpose for which it was designed, i.e., to be read. More importantly perhaps, the danger of plaintiff's proposed theory is the chilling effect it would have on the First Amendment—Freedoms of Speech and Press. Would any author wish to be exposed to liability for writing on a topic which might result in physical injury? e.g. How to cut trees; How to keep bees? (439 N.Y.S.2d at 822–823).

This same result is reached in *Cardozo v. True*, 342 So.2d 1053 (Fla.App.1977). In that case the plaintiff purchased a cookbook and while following a recipe was injured when she tasted a raw piece of an ingredient that was poisonous until cooked. She based her claim on breach of warranty in that the book contained inadequate instructions and warnings. The court, in denying her claim against the bookseller, drew a distinction between the physical book and the ideas contained therein, stating (at 1056):

> As we have observed, books are goods. As such Ellie's is held to have impliedly warranted the tangible, physical properties; i.e., printing and binding of books. But, at this point it becomes necessary to distinguish between the tangible properties of these goods and the thoughts and ideas conveyed thereby. The principle involved is not directly controlled by any precedent for the decisional law, either under the doctrine of implied warranty under common law or as codified under the U.C.C. It is unthinkable that standards imposed on the quality of goods sold by a merchant would require that merchant, who is a book seller, to evaluate the thought processes of the many authors and publishers of hundreds and often thousands of books which the merchant offers for sale. One can readily imagine the extent of potential litigation. Is the newsdealer, or for that matter the neighborhood news carrier, liable if the local paper's recipes call for inedible ingredients? We think not.

Finally, Employers relies on *McKown v. Illinois Publishing and Printing*, 289 Ill. App. 59, 6 N.E.2d 526 (1937). In that case the court refused to hold a newspaper liable for injuries to one of its readers allegedly resulting from the use of a dandruff remedy recommended in an article. The court held that ideas hold a privileged position in our society, and they are not equivalent to commercial products. Based on these cases Employers argues:

> The simple truth is that the insurance policy refers to claims "respecting the product," the physical book with its physical characteristics. The endorsement itself provides further proof that the parties only expected the policy to cover claims caused by the physical manual in that the policy was at the minimum rates. Clearly a policy insuring injuries from a saw would not be written at $9.00. Property damage coverage was $3.00 more. This policy provides exactly the coverage paid for, if the book causes damages (e.g., by having a sharp object embedded in the cover), Sears is protected. (Employers' Memo at p. 5).

The court will first deal with the insurer's obligation to defend. An insurer has a duty to defend all claims asserted in a lawsuit against its insured when the complaint contains *any* allegation which is potentially covered by the policy, *Sears, Roebuck and Co. v. Reliance Insurance Co.*, 654 F.2d 494 (7th Cir.1981); *Solo Cup Co. v. Federal Insurance Co.*, 619 F.2d 1178 (7th Cir.), *cert. denied*, 449 U.S. 1033, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980); *Colton v. Swain*, 527 F.2d 296 (7th Cir.1975); *Carboline Co. v. Home Indemnity Co.*, 522 F.2d 363 (7th Cir.1975). "An insurer may not refuse the tendered defense of an action unless a comparison of the policy with the underlying complaint shows on its face there is no potential for coverage." *Solo Cup, supra*, at 1183.

The first question therefore is whether Count III of Short's complaint alleges injury resulting from Midwest's "product" covered by the insurance policy. Short does not allege a product liability claim against Sears, so Short's complaint does not refer to the manual as a product

or even as a defective product. Short's claim appears to be a negligence claim for breach of a duty to provide instructions which adequately instruct and warn a user of a radial arm saw. But Short does not appear to be alleging that Sears owed this duty because it sold Short the saw. Short seems to be complaining about Sears' distribution and sale of a manual which allegedly contained inadequate instructions and failed to warn of certain dangers. The sale of the manual is at the heart of Short's claim in Count III. Under this reading of Count III, the manual, albeit the contents of the manual, is the basis of Short's claim. Thus, Midwest's "product" is involved in Count III.

Employers' contention that the manual is actually two products, the first being the physical manual and the second being the intellectual content of the manual, and that the insurance policy was intended to cover only the physical manual, is not supported by the plain and unambiguous language of the policy. The policy makes no distinction as to coverage between claims arising from the physical characteristics, and claims arising from the intellectual content, of the manual. The vendor's endorsement states:

> It is agreed that the "Persons Insured" provision is amended to include any person or organization designated below (herein referred to as "vendor"), as an insured, but only with respect to the distribution or sale in the regular course of the vendor's business of the named insured's products designated below....

In the next following space in the vendor's endorsement, the named insured's products are "designated" simply as "products." (PX–F). The definition of the "named insured's product" contained in the policy is a broad one, stated without any qualification as to physical characteristics or intellectual content. The policy states:

> "[N]amed insured's products" means goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, including any container thereof (other than a vehicle), but "named insured's product" shall not include a vending machine or any property other than such container, rented to or located for the use of others but not sold .... (PX–F).

■ It is well established that when interpreting an insurance policy, as any other contract, clear and unambiguous language must be taken in its plain, ordinary and popular sense. It is equally well settled that insurance policies are construed in favor of the insured and against the carrier who prepares them. *Dawe's Laboratories v. Commercial Insurance Co.*, 19 Ill. App.3d 1039, 313 N.E.2d 218 (1st Dist. 1974); *Grahame v. Mitchell*, 28 Ill.App.3d 334, 329 N.E.2d 17 (5th Dist.1975). In *Grahame v. Mitchell*, the Illinois Appellate Court reversed a declaratory judgment in favor of a carrier and held that an exclusion in an automobile policy did not bar coverage. The court stated (at 340–41, 329 N.E.2d 17):

> The terms used in a contract of insurance are to be given the ordinary, plain, popular meaning. We will not enlarge the accepted meaning of "automobile business" [the exclusion]. If the insurer intended to include the business of transporting or delivering automobiles, it had knowledge that such business did exist and the expertise to include expressly such business with the policy exclusions. Ambiguities are to be resolved in favor of coverage; exclusions from coverage to be construed narrowly.

■ Giving the ordinary, plain, meaning to the term "named insured's product" as defined in the policy, Midwest's product plainly is the manual, and the policy makes no distinction between the physical manual and the intellectual content of the manual.

The cases cited by defendant may support a substantive defense to Count III of Short's complaint. They do not, however, support Employers' claim that Count III does not involve a Midwest product so that the carrier need not meet its policy obligation to defend. None of the cases cited by Employers involved the insurance coverage issue.

■ The fact that a substantive defense may exist to the underlying cause of action is not a valid basis for an insurer to deny a tender of defense. Where the complaint contains allegations which may be covered by the policy, the carrier's duty to defend continues until such time, if ever, as the claim is confined to noncovered allegations. *Sears, Roebuck and Co. v. Reliance, supra; Solo Cup Co. v. Federal Insurance Co., supra.*

Furthermore, Employers' policy of insurance specifically requires it to defend lawsuits even if they are without merit. Thus, the policy provides that Employers is obligated "to defend any suit against the insured [Midwest and Sears], ... even if any of the allegations of the suit are groundless, false or fraudulent." (PX–E).

■ Employers also contends that because it charged a "minimum premium" for the vendor's endorsement, the parties must have expected the policy to cover only claims caused by the "physical characteristics" of the soft-bound manual. The vendor's endorsement merely extends the product liability coverage already paid for by the principal insured to Sears as an additional insured. The true cost for the liability protection is reflected in the initial premium paid by Midwest, and that premium is not a fact of record. Also, Employers determined the rate to be charged for the vendor's endorsement and it bears the risk of setting what it now claims is a "low" premium in order to secure and maintain Midwest's business.

A separate issue is the duty of the insurer to indemnify. The court finds that it is premature to decide this issue; declaratory relief on this issue must be sought after Short's claim is fully litigated in the state court. *Centennial Insurance Co. v. Applied Health Care Systems, Inc.,* 710 F.2d 1288 (7th Cir.1983).

Next Employers argues that if the court finds for Sears on the product issue, the insurance policy nevertheless does not provide coverage because of three exclusions contained in the policy. The first exclusion, contained in Section 1(b)(i) of the vendor's endorsement, excludes coverage for any injuries arising out of any act by a vendor which changes the condition of the product. Employers claims that Sears' actions described above caused a "change in the condition" of the manual and that the injury arose out of this "change," thus excluding coverage.

■ Plainly, Exclusion 1(b)(i) contemplates a change by the vendor in the finished product *after* it has left the hands of the principal insured. Sears made no change in the condition of the finished manual purchased from Midwest and subsequently resold to the public. The manual was sold to the public in the exact same form as it was written and published by Midwest. Under the vendor's endorsement, Sears stands in the shoes of Midwest; Sears is one of the "Persons Insured." The insured obviously can change the product before it is shipped for resale. Any "changes" made to the product before it left Midwest could not be the kind of changes contemplated in Exclusion 1(b)(i).

■ Exclusion 1(b)(i) also applies only to asserted liability for bodily injury or property damage "arising out of" a change in the condition of the product. The "arising out of" language requires Employers to demonstrate a causal connection between a change made by Sears in the manual and the injuries asserted by Short. *Sears Roebuck and Co. v. Reliance Insurance Co.,* 654 F.2d 494 (7th Cir.1981).

■ Employers argues that Short complains about the instructions contained (or not contained) in the manual and that instructions were provided by Sears through Emerson, reviewed by Sears as technical adviser, and reviewed by Sears before publication. Employers does not spell out the basis for treating Sears and Emerson as a single entity. The remaining conclusory statements are inadequate to establish the requisite causal connection. A formal predicate for Exclusion 1(b)(i) may develop during the course of the Short litigation, but it is not obvious now.

Next Employers relies on Exclusion 1(b)(iv) which excludes coverage to the vendor for any injury arising out of a product which after sale is used as a part or ingredient of any other thing or substance by or for the vendor. Employers argues that the Short complaint's allegations claim that Short was injured by using a Radial Arm Saw sold by Sears in conjunction with the instructions and warnings contained in the manual sold by Sears. Employers concludes that the manual was only a part of the total injury-causing entity. This argument is frivolous and will not be discussed further.

Finally, Employers relies on Exclusion 2 which states that coverage does not apply to any person or organization, as insured, from whom Midwest has acquired any ingredient or part entering into such product. Employers contends that Sears supplied at least some of the information and material used to prepare the manual. Based on Sears' participation in the preparation of the manual, Employers argues that the plain language of the policy excludes coverage.

An identical argument on the same policy language was rejected by the Court of Appeals in *Sears v. Reliance Insurance, supra,* based on an interpretation of the policy language. Employers suggests that there were factors present in that case, not present here, which "reinforced" the Court's holding and for that reason the case need not be followed by this court. The most important of the supporting factors relied on in *Reliance* is present here. If Exclusion 2 applies, the policy is a nullity. The facts of this case are sufficiently similar to *Reliance* so that this court is compelled to follow *Reliance.*

Accordingly, plaintiff's motion for summary judgment is granted and Employers' motion for summary judgment is denied on the duty to defend issue. Both motions are denied, without prejudice, on the duty to indemnify issue as that issue is premature. This case is dismissed.

It is so ordered.