440 So.2d 625 (1983)
SENCO OF FLORIDA, INC., Appellant,
v.
CONTINENTAL CASUALTY COMPANY, Appellee.
No. 83-255.
District Court of Appeal of Florida, Second District.
November 16, 1983.
Chris W. Altenbernd and Jonathan Alpert of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for appellant.
Oscar Blasingame and Luis Prats of Blasingame, Forizs & Smiljanich, St. Petersburg, for appellee.
GRIMES, Judge.
This case involves an interpretation of a vendors broad form endorsement pertaining to products liability coverage.
Ronald J. Raite sued Senco of Florida, Inc. (Florida Senco), for personal injuries suffered in the explosion of a pneumatic stapling tool manufactured by Senco Products of Ohio, Inc. (Ohio Senco), and sold by Florida Senco. Florida Senco sought coverage under a products liability insurance policy issued by Continental Casualty Co. (Continental) to Ohio Senco which contained the vendors broad form endorsement. After Continental's insistence upon defending under a reservation of rights, Ohio Senco brought a declaratory judgment action against Continental for a determination of coverage.
At the trial, the parties stipulated to the pertinent facts. Ohio Senco is engaged in *626 the business of manufacturing and marketing pneumatic nailing tools used primarily in the construction industry. Florida Senco is an authorized sales and service representative of Ohio Senco. Ohio Senco supplies Florida Senco with a complete line of stapling tools together with replacement parts. Prior to November 11, 1971, many model M-II staplers were sold by Ohio Senco to Florida Senco for distribution to the general public and the construction industries. The M-II stapler which ultimately exploded was leased by Florida Senco to a mobile home manufacturer on November 11, 1971, and returned to Florida Senco on September 19, 1976. The stapler was then sold to H. Wallace George Construction Company on June 9, 1977. Some time between November 11, 1971, and June 9, 1977, the operating mechanism of the stapler was placed in a new housing which had been manufactured by Ohio Senco and sold to Florida Senco as replacement housing. On September 8, 1978, Raite was injured when an oxygen bottle was hooked to the air line of the stapler, causing it to explode.
The pertinent portion of the vendors broad form endorsement in Continental's policy reads as follows:
It is agreed that the "Persons Insured" provision is amended to include any person or organization designated below (herein referred to as "vendor"), as an insured, but only with respect to the distribution or sale in the regular course of the vendor's business of the named insured's products subject to the following additional provisions:
1. The insurance with respect to the vendor does not apply to:
... .
bodily injury or property damage arising out of
(i) any physical or chemical change in the form of the product made intentionally by the vendor,
... .
Name of Person or Organization:
All Vendors Doing Business With the Named Insured
Following a hearing, the court concluded that Florida Senco was not covered under the policy because the installation of the replacement housing on the stapler constituted a physical change in the form of the product so as to come within the exclusion.
We believe the court misconstrued the exclusion. The purpose of the vendors broad form endorsement is to provide coverage for vendors who sell a manufactured product without material alteration. Clearly, neither the manufacturer nor its insurance carrier has any control over the design of the product after it has left the manufacturer's control. Therefore, if the vendor modifies the design or the function of the product before it is sold, the exclusion acts to deny coverage for the vendor. Insurance policies should be construed to provide a reasonable, practical, and sensible interpretation consistent with the intent of the parties. United States Fire Insurance Co. v. Pruess, 394 So.2d 468 (Fla. 4th DCA 1981). We can think of no valid underwriting justification to exclude coverage for a vendor who has been careful to replace parts of the manufacturer's products with replacement parts furnished by the manufacturer and covered by the policy.
The replacement part, manufactured by Ohio Senco, was designed to replace the original part. It has the same basic design and serves the same function as the original part. The replacement of the housing may have been a "change" in the product but it cannot reasonably be said that this constituted a change in the "form of the product." The lower court's interpretation would exclude vendor protection for almost every service performed by an authorized vendor using authorized repair parts. We hold that the replacement of the stapler housing with an authorized repair part did not constitute a change in the form of the product.
In view of our conclusion that there was no change in the form of the product, we need not reach the question of whether there was bodily injury or property damage "arising out of" any change in the form of the product. This point was raised by Florida *627 Senco below but not addressed by the court in the final judgment. We note, however, that in Raite's allegations of negligence and strict liability against Florida Senco, he does not assert that the replacement housing had anything to do with his injury. Therefore, at the very least Continental would owe Florida Senco a defense, and unless it were later determined that the replacement of the housing had something to do with the injury, Florida Senco would be covered even if there had been a physical or chemical change in the form of the product. See St. Louis-San Francisco Railway Co. v. Armco Steel Corp., 490 F.2d 367 (8th Cir.1974).
The judgment is reversed, and the case is remanded for entry of a judgment for Florida Senco together with the assessment of reasonable fees for the services of its attorneys at both the trial and appellate levels under section 627.428, Florida Statutes (1982).
OTT, C.J., and HOBSON, J., concur.