475 So.2d 472 (1985)
INDUSTRIAL CHEMICAL & FIBERGLASS CORP., A Corporation,
v.
HARTFORD ACCIDENT & INDEMNITY COMPANY, A Corporation, et al.
No. 83-1244-CER.
Supreme Court of Alabama.
June 21, 1985.
Rehearing Denied August 23, 1985.
*473 Don B. Long, Jr. and Thomas E. Walker of Johnston, Barton, Proctor, Swedlaw & Naff, Birmingham, for appellant.
T. Thomas Cottingham, Julia Smeds Stewart, and F.A. Flowers III of Thomas, Taliaferro, Forman, Burr & Murray, Birmingham, for appellees.
*474 PER CURIAM.
The issue presented by these certified questions from the United States District Court, Northern District of Alabama, is whether Hartford Accident & Indemnity Company is obligated under the terms of its policy to defend Industrial Chemical & Fiberglass Corporation.
On July 6, 1980, Terry D. Chandler and Dewey Edward Ensley, employees of J.M. Foster, Inc., were working within the line and scope of their employment repairing cracks in the floor of a fiberglass storage tank located at an acid regeneration plant in Fairfield, Alabama. The repair process required the use of certain chemicals, particularly methyl ethyl ketone peroxide (MEKP), a catalyst which is mixed with a promoter, cobalt naphthenate, to cause the polyester resin placed over fiberglass matting to gel and become hard. The MEKP, which was still in its original container, was placed inside a galvanized metal bucket and lowered into the tank where Chandler and Ensley were working. As a result of cobalt contamination, the MEKP decomposed, began to smoke, and erupted into flame. Both Chandler and Ensley suffered severe burns, which resulted in their deaths.
The MEKP was manufactured by Reichhold Chemicals, Inc. (Reichhold) and distributed by Industrial Chemical & Fiberglass Corp. (Industrial Chemical). Chandler and Ensley's widows and children brought wrongful death actions against Reichhold and Industrial Chemical, and based their claims on negligence, breach of warranty, and the Alabama Extended Manufacturer's Liability Doctrine. Thereafter, Industrial Chemical brought a declaratory judgment action in the United States District Court for the Northern District of Alabama, seeking a determination that Hartford Accident & Indemnity Company (Hartford) is obligated to defend it in the wrongful death actions based upon certain provisions in an insurance policy issued by Hartford to Reichhold. Those provisions are as follows:
"COVERAGE ABODILY INJURY LIABILITY
COVERAGE BPROPERTY DAMAGE LIABILITY
"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
Coverage A, bodily injury or
Coverage B, property damage
to which this insurance applies, caused by an occurrence, if the bodily injury or property damage is included within the completed operations hazard or the products hazard, and the company shall have the right and duty to defend any suit brought against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent ...
"* * *
"II. PERSONS INSURED
"Each of the following is an insured under this insurance to the extent set forth below:
"(a) if the named insured is designated in the declarations as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor, and the spouse of the named insured with respect to the conduct of such a business;
"(b) if the named insured is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;
"(c) if the named insured is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such;
"(d) any person (other than an employee of the named insured) or organization while acting as real estate manager for the named insured.

*475 "This insurance does not apply to bodily injury or property damage arising out of the conduct of any partnership or joint venture of which the insured is a partner or member and which is not designated in this policy as a named insured.
"* * *
"DEFINITIONS
"* * *
"`bodily injury' means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom;
"* * *
"`named insured' means the person or organization named in Item 1 of the declarations of this policy;
"`named insured's products' means goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, including any container thereof (other than a vehicle), but `named insured's products' shall not include a vending machine or any property other than such container rented to or located for use of others but not sold;
"`occurrence' means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured;
"* * *
"`products hazard' includes bodily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others.
"* * *
"This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:
"COMPLETED OPERATIONS & PRODUCTS LIABILITY INSURANCE
"ADDITIONAL INSURED VENDOR'S BROAD FORM MODIFIED:
"IT IS AGREED THAT THE `PERSONS INSURED' PROVISION IS AMENDED TO INCLUDE ANY PERSON OR ORGANIZATION DESIGNATED BELOW (HEREIN REFERRED TO AS VENDORS) AS AN INSURED BUT ONLY WITH RESPECT TO THE DISTRIBUTION OR SALE IN THE REGULAR COURSE OF THE VENDOR'S BUSINESS OF THE NAMED INSURED'S PRODUCTS DESIGNATED BELOW SUBJECT TO THE FOLLOWING ADDITIONAL PROVISIONS:
"1. THE INSURANCE WITH RESPECT TO THE VENDOR DOES NOT APPLY TO
"(A) ANY EXPRESSLY [sic] OR IMPLIED WARRANTY UNLESS SUCH WARRANTY IS AUTHORIZED BY THE NAMED INSURED;
"(B) BODILY INJURY OR PROPERTY DAMAGE ARISING OUT OF
"* * *
"3. DEMONSTRATION, INSTALLATION, SERVICING OR REPAIR OPERATIONS EXCEPT SUCH OPERATIONS PERFORMED AT THE VENDOR'S PREMISES IN CONNECTION WITH THE SALE OF THE PRODUCT...."
Industrial Chemical was one of those designated as a vendor within the meaning of the Additional Insured Vendor's Broad Form Modified provision; as such, it sought coverage under that provision. Hartford, however, denied coverage to Industrial Chemical under the policy, and both sides moved for summary judgment.
It was Hartford's position in the federal court, as well as here, that the coverage with respect to the vendor does not apply to bodily injury arising out of repair operations. It argues that since the employees were engaged in a repair operationrepairing the tankthe coverage offered by the vendor's endorsement is excluded. Industrial *476 Chemical counters this argument by asserting that the "arising out of" phrase, as it appears in the exclusion, "should be interpreted to require Hartford to prove that the repair operations caused the bodily injury in order to invoke the exclusion to defeat coverage."
Because these were the respective positions of the parties, it is obvious why the federal court framed the questions to us as follows:
"1. The meaning of the term `arising out of' as that term is used in paragraph 1(B) of the Additional Insured Vendor's Broad Form Modified endorsement to the Hartford Policy.
"2. Whether, in order to establish the availability of the exclusion set forth in paragraph 1(B)3 of the Additional Insured Vendor's Broad Form Modified endorsement to the Hartford Policy for `bodily injury ... arising out of ... repair operations,' it is necessary to show only that the person sustaining bodily injury was engaged in repair operations or whether it is necessary to show that repair operations were the cause of such bodily injury."
This Court consented to answer the certified questions and granted oral argument.
It is apparent from the questions that both the parties and the federal court assumed that if the bodily injury occurred while the person was engaged in a repair operation of any kind, the exclusion expressed in paragraph 1(B)3 applied. The court then asked, still assuming that the exclusion applied to any kind of repair operation, whether the exclusion would likewise apply whether the repair operation were the cause of the injury.
We do not read the exclusion to apply to all repair operations and, therefore, address the issue which is obviously presented by the questions, viz.:
Is Hartford obligated to defend these lawsuits against Industrial Chemical, or stated differently, is Industrial Chemical covered by the vendor's endorsement, under the facts of this case, and not excluded by paragraph 1(B)3?
As we read the endorsement, Industrial Chemical is covered under the policy, and the exclusion contained in 1(B)3 refers not to repair operations generally, but to repairs to the product itself. The fact that the deceased employees were engaged in "repair operations" on a storage tank while using the manufacturer's product, sold in its original form by the vendor, does not bring it within the exclusion. A fair reading of the vendor's endorsement demonstrates the correctness of this position. It is obvious that the vendor's endorsement was designed to provide coverage to a vendor of an insured's product except where bodily injury or property damage arises out of a demonstration (of the product), installation (of the product), servicing (of the product), or repair operations (on the product). Coverage is afforded where such operations, i.e., demonstration (of the product), installation (of the product), or repair operations (on the product), are performed at the vendor's premises in connection with the sale of the product.
Stated differently, the endorsement affords coverage to the vendor of the named insured's product, but excludes coverage where bodily injury arises out of the demonstration, installation, servicing, or repair of the product, except where those activities take place on the premises of the vendor in connection with the sale of the product.
It is fair to hold the manufacturer (and its insurer) liable for bodily injury caused by a defect in the product, even though the product has been changed, if the injury was not caused by the change.
It is equally fair to hold the manufacturer or its carrier liable for bodily injury caused by a defect in the product, even though the product is undergoing demonstration, installation, servicing, or repair, if these activities did not cause the injury.
There is nothing in this exclusion to remove from coverage an injury occurring after the sale of the product while the *477 product is being used for its intended purpose, whether or not that use involves repairs to something other than the product itself.
If we assume that facts are produced which bring the exclusion into operation, that is, facts showing a repair operation performed upon the product itself, then we would hold that in order to exclude coverage, Hartford must prove that the repair operation was the cause of the bodily injury suffered by the employees.
Several cases from other jurisdictions are cited by Industrial Chemical in support of its contention that Hartford must prove that the bodily injury arose out of repair operations. Sears, Roebuck & Co. v. Reliance Insurance Co., 654 F.2d 494 (7th Cir.1981); Sears, Roebuck & Co. v. Employers Insurance of Wausau, 585 F.Supp. 739 (N.D.Ill.1983); Mattocks v. Daylin, Inc., 452 F.Supp. 512 (W.D.Pa.1978), affirmed, 614 F.2d 770 (3d Cir.1979); Sears, Roebuck & Co. v. Zurich Insurance Co., 299 F.Supp. 518 (N.D.Ill.1969); Senco of Florida, Inc. v. Continental Casualty Co., 440 So.2d 625 (Fla.Dist.Ct.App.1983).
In all of these cases, the exclusion concerned either changes made in the product (of the insured) or a product (of the insured) which was used as an ingredient of another thing.
In Mattocks, Sullcraft Manufacturing Co., the vendor of a pair of boys' cotton pajamas which ignited and injured a minor plaintiff, sought a judgment declaring that it was entitled to be defended by I.N.A., the insurer of the manufacturer of the cloth used in the pajamas (Dan River, Inc.).
The existing policy of insurance between I.N.A. and Dan River contained a vendor's endorsement similar to the one presently at issue, which purported to provide coverage to vendors of Dan River's product. The exclusion in that policy was as follows:
"1. The insurance with respect to the vendor does not apply to:
"* * *
"(b) bodily injury or property damage arising out of:
"(i) any physical or chemical change in the form of the product made intentionally by the vendor.
"* * *
"(iv) products which after distribution or sale by the Named Insured have been labeled or relabeled or reused as a container, part or ingredient of any other thing or substance by or for the vendor."
452 F.Supp. at 514.
I.N.A. opposed the declaratory judgment action by contending that the above exclusion was clearly intended to exclude vendors who acquired materials from Dan River to become component or integral parts of products manufactured by those vendors, and that, by fashioning the material purchased into pajamas, Sullcraft had changed the physical form of the material and called into play the exclusion.
The United States District Court for the Western District of Pennsylvania disagreed and stated:
"Considering the terms of the exclusions set forth in the endorsement in context with the other terms contained therein, we conclude that Sullcraft was not excluded from coverage. Section 1(b)(i) excludes coverage with respect to any bodily injury `arising out of' any intentional, physical change in form of the product by the vendor. It is clear that Sullcraft intentionally made changes in the form of the cotton flannelette by cutting and tailoring the material into finished pajamas. However, the injuries sustained by Kevin Mattocks when the pajamas ignited cannot be said to have arisen out of the changes Sullcraft made. Plaintiff's theory of liability was that plaintiff was injured due to the unreasonably dangerous nature of the pajamas constructed of nonflame retardant cotton flannelette. Plaintiff also proposed a theory of liability based on defendant's failure to warn (which was rejected by the Court because of plaintiff's failure to lay the proper factual foundation) with respect to the non-flame retardant propensities of the pajamas. No claim ever was made that Sullcraft's physical *478 changes of the Dan River material caused plaintiff's injuries.
"The `arising out of' language of Section 1(b) of the endorsement limits the applicability of Section 1(b)(i). The changes in form by a vendor must cause plaintiff's injuries before the vendor is excluded from coverage under the endorsement. If the change in form resulted in plaintiff's injuries, the vendor is obligated to provide its own defense. Any change in form causing injury would take the product out of Dan River's control. In such a case fairness demands that neither Dan River nor its carrier be held responsible for an injury causing change by a third party. However, where the change in form does not cause the injury and the injury is caused by the material itself, regardless of the form it takes, the manufacturer (and therefore its carrier) is responsible for any harm arising therefrom."
452 F.Supp. at 515.
Similarly, in Reliance Insurance Co., the Seventh Circuit Court of Appeals held that an exclusion almost identical to the one in Mattocks did not exclude coverage of a vendor (Sears, Roebuck & Co.) which purchased cloth from a manufacturer (Riegel Textile Corp.), had it sewn into slacks, labeled, and repackaged, and which, after the slacks caught fire and killed a girl, sought coverage under the vendor's endorsement of Riegel's insurance policy with Commercial Union Insurance Company. The exclusion therein provided:
"1. The insurance with respect to the vendor does not apply to
"* * *
"(b) bodily injury or property damage arising out of
(i) any physical or chemical change in the form of the product made intentionally by the vendor,
(ii) repacking, unless unpacked solely for the purpose of inspection, demonstration, testing or the substitution of parts under instructions from the manufacturer and then repacked in the original container,
"* * *
(iv) products which after distribution or sale by the named insured have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor."
654 F.2d at 496.
In rejecting the applicability of the exclusion, the court adopted and expounded upon the reasoning expressed in Mattocks, stating:
"First, the first category of Exclusion 1 excludes coverage for injury arising out of `any physical or chemical change' or arising out of repacking. But the injury here does not meet the `arising out of' requirement. Although the fabric was `changed' and `repacked' by Rollic, the Cumberlands allege, among other things, that their daughter's injury `arose out of' the fabric itself and not any change made in the fabric or any repacking. On this issue, it is worth quoting in full the Mattocks court's discussion of identical contract language:
`The "arising out of" language of Section 1(b) of the endorsement limits the applicability of Section 1(b)(i). The changes in form by a vendor must cause plaintiff's injuries before the vendor is excluded from coverage under the endorsement. If the change in form resulted in plaintiff's injuries, the vendor is obligated to provide its own defense. Any change in form causing injury would take the product out of [the manufacturer's] control. In such a case fairness demands that neither [the manufacturer] nor its carrier be held responsible for an injury causing change by a third party. However where the change in form does not cause the injury and the injury is caused by the material itself, regardless of the form it takes, the manufacturer (and therefore its carrier) is responsible for any harm arising therefrom.'
452 F.Supp. at 515. For the above reasons, the `arising out of' requirement *479 prevents application of the first category of exclusions.
"Analysis of the second category of exclusions in Exclusion 1 is more troublesome. This category refers to injuries arising out of `products'not `changes' which have been relabeled or used as a part of any other thing. The `arising out of' requirement remains in this second category. But if Commercial's interpretation of the contract prevails, that requirement is effectively nullified by the way in which the excluded items are listed. A comparison of the two categories of exclusion in Exclusion 1 convinces us that Commercial's argument must be rejected.
"The first category of exclusions in Exclusion 1 excludes injuries arising out of specified changes. This language requires a nexus between the changes and the injuries. As the Mattocks court discussed, this language comports with principles of fairness. It would be unfair to hold a manufacturer responsible for injuries arising out of changes made after the product left the manufacturer's control. But Commercial argues that the second category of exclusions in Exclusion 1 need have no nexus requirement between the changes and the injuries. Commercial argues that the second category of exclusions should be read to exclude coverage of injuries arising out of products which have been `labeled or relabeled,' or used as a `part' of any other thing regardless of whether there was any connection between the injury and the relabeling or use as a part.
"The problem with Commercial's argument is that it proves too much. Riegel sold the fabric to Sears to become slacks with the Sears' label. If the mere labeling or use as a `part' of the finished slacks could defeat coverage of any defect in the fabric itself, then the vendor's insurance covering Sears could not have been worth the piece of paper on which it was printed. The vendor's endorsement would become a nullity. As the Mattocks court said, discussing the identical language:
"`To interpret the provisions of [this] exclusion as does [the insurer], would effectively preclude any vendor of [the manufacturer's] products (except those selling under the [manufacturer's] label) from coverage. This is not a reasonable interpretation of the contract of insurance because of the language used in the endorsement and in view of the usual impetus for securing products hazard liability insurance, i.e., to encourage vendors to purchase and sell products of the party securing the insurance.'
452 F.Supp. at 516.
"We agree with the Mattocks court that the construction suggested by the carrier is not reasonable. That construction would nullify the very purpose of the vendor's endorsement, causing a forfeiture where the parties intended coverage. This court must assume that Commercial intended to insure Sears under the vendor's endorsement of its policy unless there is a nexus between changes made by Sears and the injuries. Any other assumption would allow the carrier to simply accept the premium and avoid any corresponding obligation. Indeed, the vendor's endorsement listed Sears as an `additional named insured.' But if this exclusion is construed as Commercial suggests, there would never be any coverage for Sears with regard to Riegel products if those products then became final `things' which received Sears' labels. The law cannot countenance such illusory `coverage.'
"Not only would Commercial's interpretation render the vendor's endorsement a nullity, but also it would violate general rules of construction of insurance contracts. A familiar rule is that insurance policies are to be construed in favor of the insured. This principle is most rigorously applied in considering the meaning of exclusions incorporated into a policy of insurance. See Grahame v. Mitchell, 28 Ill.App.3d 334, 329 N.E.2d 17, 22 (1975) (`Ambiguities are to be resolved in favor of coverage; exclusions *480 from coverage are to be construed narrowly.'); and Dawe's Laboratories, N.V. v. Commercial Ins. Co., 19 Ill.App.3d 1039, 313 N.E.2d 218, 219, 225 (1974) (`An interpretation of the above exclusion to eliminate the liability of the insurer in the case at bar and to exclude production and manufacturing mistakes would virtually emasculate insurance protection against product liability.')." (Emphasis on "nexus" supplied.)
654 F.2d at 497-499.
The same result was reached in Employers Insurance of Wausau, supra, in which the court, citing Reliance Insurance Co., held that an exclusion contained in a vendor's endorsement excluding from coverage "injuries arising out of any act by a vendor which changes the condition of the product," applied only to injuries for which there was proven a causal connection with the change made by the vendor. Employers Insurance of Wausau, supra, at 745.
These cases involved fact situations where the vendor made changes or incorporated the insured's product into another product, thus falling within the exclusion. The courts held, however, that the bodily injury which occurred was covered unless it arose out of the change made by the vendor. Each court held that the changes in form admittedly made by the vendor must also cause the injuries before the coverage of vendor is excluded.
However, as we read the exclusion in the policy involved in this case, it simply does not apply to the repair operations on the tank being worked on by these employees. There was no repair operation on the insured's product; thus, the exclusion has no application to the facts in this case, as stated to us in the certification.
If, however, facts are produced which would make the exclusion applicable, then, in order to avoid liability for bodily injury, Hartford must show that the bodily injury arose out of the repair operation.
CERTIFIED QUESTIONS ANSWERED.
TORBERT, C.J., and JONES, ALMON, SHORES and ADAMS, JJ., concur.
MADDOX, FAULKNER, EMBRY and BEATTY, JJ., concur specially.
MADDOX, Justice (concurring specially).
I concur in the result reached. The majority holds that "the exclusion in 1(B)(3) refers not to repair operations generally, but to repairs to the product itself." (Emphasis added.) I do not read the policy in this manner.
I do not believe that a chemical, the product in this case, can be repaired. Consequently, I think the words "repair operations," as they are used in the policy, refer to operations in which the chemical is being used instead of operations in which it is being repaired. I recognize that if the product were something other than a chemical, the construction placed on the words "repair operations" by the majority might apply, but I do not believe that construction should apply to the product involved in this case.
FAULKNER, EMBRY and BEATTY, JJ., concur.